## NAQUIN v. BILLIOTT et al.
### No. 1364.

Court of Appeal of Louisiana. First Circuit. June 11, 1934.

C. A. Blanchard, of Morgan City, for appellant.

Ellender & Ellender, of Houma, for appellees.

MOUTON, Judge.

This suit was brought against Stillie Billiott and Alidore Mahler in damages for an assault and battery on plaintiff.

Mahler has been eliminated from the suit, as plaintiff's complaint in this court is directed solely against Stillie Billiott.

■ Plaintiff and Billiott were engaged in trapping muskrats in the marsh lands of Terrebonne parish. In a fight that happened in the marsh between plaintiff and Billiott, plaintiff suffered injuries for which he is claiming damages.

Plaintiff and Billiott had set their traps to catch the muskrats in the marsh lands in close proximity. On the day of the encounter, plaintiff, in company with Mr. Lambert, a neighbor, had gone out in the marsh to see about his property line.

Mr. Lambert testifies that he went out there at the invitation of plaintiff to see about his boundary lines; also, that he was a friend of the plaintiff, likewise of Mr. Billiott, and in which he is not contradicted.

Mr. Lambert was not in the business of catching muskrats, was not a rival or competitor therein, which could have brought about hostile or inimical feelings between him and Mr. Billiott. The fact is, that there is not in this record anything to indicate that Mr. Lambert was not on friendly terms with Mr. Billiott, as was testified to by Mr. Lambert and not denied by Mr. Billiott, as before stated.

These preliminary remarks in reference to Mr. Lambert are made because plaintiff in his testimony is supported by the evidence of Mr. Lambert, which is neither evasive nor exaggerated and which, from the record in this case, this court cannot find there could be any good reason why it should be discredited.

Plaintiff says, when Mr. Billiott got to the place where he was with Mr. Lambert, that Mr. Billiott cursed him out and said, "It's a long time I have been waiting here to catch you"; that defendant kept on cursing and advancing on him and pulled a pole out of the marsh saying, "you will see what is the matter." Plaintiff says he had a stick that he ordinarily used in going to his traps; that defendant told him to throw this stick away which he did while defendant was still holding the pole. Plaintiff says he told defendant he was not there for trouble; that Mr. Lambert told defendant he should not hit plaintiff with that pole, upon which defendant dropped the pole. After dropping the pole, plaintiff says defendant struck him in the face with his fist and knocked him down, that his head was sunk under the water and that defendant continued to beat him until Mr. Lambert came up and took him off.

Mr. Lambert testifies that defendant cursed plaintiff using language not necessary to mention in this opinion, and confirms the account of what occurred as given in the foregoing statement from plaintiff's testimony.

It is shown by the testimony of plaintiff and Mr. Lambert that the stick plaintiff had in his hand was customarily used in these marshes where the land is soft and boggy; and it is not contradicted that this stick was of that character which could not have led, defendant to believe that plaintiff was carrying it for the purpose of making an attack on him.

Upon seeing this stick in plaintiff's hand, defendant says he pulled a pole from the marsh with the intention, as his testimony indicates, of using it in his right of self-defense. Neither the stick nor the pole was, however, used, as they were both dropped, upon which defendant knocked plaintiff down with his fist.

In referring to the testimony of Mr. Lambert, the judge says, in his written opinion, that when plaintiff and defendant first addressed each other Mr. Lambert was 50 feet or a half arpent distant from the two disputants and from that fact draws the inference that his attention was not directed to what was going on.

The record shows that when Mr. Lambert was testifying about the distance he was from plaintiff and defendant at the time, he pointed out to a wall in the courtroom, and that the court estimated the distance at about 45 feet.

Mr. Lambert testifies he was near by at the time plaintiff was cursed by defendant, and that he saw the encounter from the beginning.

The weeds in the marsh were not high at the place where the fight occurred or around there; and there is no evidence whatsoever that there was any obstacle or obstruction which could have interfered, in the least, with Mr. Lambert's vision. It does not appear that there was at the time any atmospheric disturbance of wind or rain on the marsh which could have prevented Mr. Lambert from hearing what defendant said in the abusive language he indulged in towards plaintiff. In moments of anger a man usually uses vociferous language, and we can find no

reason to believe that Mr. Lambert did not hear that to which he testified.

We are therefore of the opinion that he heard the abuse heaped upon plaintiff and saw the encounter in which plaintiff was knocked down, beaten after he fell while he was struggling with his head under the "slush" or water.

The district judge, in again referring to the testimony of Mr. Lambert, has this to say: "The circumstances leading up to the presence of the witness, Lambert, and the general atmosphere of the case, marks him as something more than a casual acquaintance of the plaintiff and suggests the thought that his sympathies, if any, would, most likely, be with the plaintiff."

Mr. Lambert was on friendly terms with the defendant, as hereinabove stated, and had no cause whatsoever to take sides with plaintiff as far as is disclosed by the record, by which we must be guided; hence, there is no "general atmosphere" in the case suggestive of the idea that, most likely, Mr. Lambert was in sympathy with the plaintiff. We cannot therefore agree with our learned brother of the district court in the inference so drawn by him from his analysis of the evidence. If the district judge had expressed his disbelief in the credibility of Mr. Lambert, this court would hesitate before taking a contrary view and different considerations would arise as to the question involving the credence to be given to the testimony of Mr. Lambert, as the right to pass on the credibility of witnesses falls largely within the province of trial judges, as it is to be presumed they may know something of their character and their respect or disregard for the truth.

There being no expressions by the court involving the character of Mr. Lambert as to his regard for truthfulness, we must say that we find nothing in the facts and circumstances of the case to warrant the conclusion that Mr. Lambert in giving his testimony was influenced by any sympathetic considerations for the plaintiff.

As Mr. Lambert swore he was on friendly terms with defendant, which is not denied, and as it does not appear, not even indicated, that he had any interest in the outcome of the suit, it is impossible for us to reconcile ourselves to the idea that he would have perjured himself to assist plaintiff in recovering damages against the defendant.

The testimony of plaintiff and Mr. Lambert shows that after plaintiff had dropped his stick and defendant the pole he was holding, defendant rushed on plaintiff and knocked him down without provocation. Plaintiff had dropped his stick in compliance with the demand of defendant, when he was struck and knocked down; he was not threatening defendant with any injury or bodily harm at the time. In knocking plaintiff down defendant was not in danger of bodily harm, and therefore was not acting in the exercise of his right of self-defense.

He was the aggressor and, under the law, is liable to plaintiff in damages for an assault and battery.

### Amount.

█ Plaintiff was severely beaten in the face where marks appeared after the fight. He testifies he was quite humiliated in appearing among his friends and relatives with these marks on his face. No doubt he must have suffered with some humiliation, which resulted from the battery.

Mr. Lambert testifies that after he had pulled off defendant from plaintiff, that defendant told plaintiff he was fortunate he had been rescued because he did not believe without that assistance he would have gotten up from where he was, meaning, as we understand it, from under the water which covered his head.

This shows that plaintiff had been subjected to harsh and dangerous treatment and must have experienced additional suffering from the water by which his head had been covered.

We find that the sum of $400, with legal interest from judicial demand, will be a fair allowance of damages to plaintiff.

The judgment is manifestly erroneous, and must be reversed, and damages decreed for plaintiff.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that plaintiff have judgment against Stillie Billiott, defendant, in the sum of $400, with legal interest from judicial demand, and that defendant pay all costs of court.