49 So.2d 770 (1951)
BEAUCOUDRAY
v.
HIRSCH.
No. 19509.
Court of Appeal of Louisiana, Orleans.
January 2, 1951.
Frederick J. Gisevius, Jr., and Donald E. Graham, New Orleans, for plaintiff and appellee.
James E. Courtin, New Orleans, for defendant and appellant.
McBRIDE, Judge.
Eugene H. Beaucoudray, Jr., filed this suit against defendant, Herbert Hirsch, for the sum of $1106.00 damages, alleging that on February 19, 1948, "* * * without cause, justification or provocation on the part of petitioner, the said defendant forcibly laid hands upon your petitioner assaulting and battering your petitioner, holding petitioner with one hand while striking your petitioner in the face with the other; * * *." After a trial in the lower court, plaintiff recovered a judgment for $350.00, from which defendant has taken this appeal.
Hirsch, in defense of the suit, alleges that he was justified in striking plaintiff, as plaintiff provoked a quarrel with him. He further alleges that he feared plaintiff would assault him, and that the steps which he pursued were necessary to protect himself from an unwarranted assault on the part of plaintiff. He also alleges that he merely slapped plaintiff's face with his open hand, and that plaintiff sustained no physical injuries.
Defendant's attack upon plaintiff occurred at about 8:45 o'clock in the morning, at the automobile parking lot located at 1312 Gravier Street in New Orleans. The chain of events which led up to the physical encounter *771 between the two men started a short time before.
According to Hirsch's testimony, he, accompanied by his wife who was seated next to him, was driving his automobile on Tulane Avenue toward the business section of New Orleans, and just as he reached a point in front of the Hotel Dieu, which area is restricted as to the speed of automotive vehicles, the plaintiff, who was also driving an automobile, passed defendant's car on the right at an excessive rate of speed. Hirsch then accelerated his speed and attempted to overtake plaintiff's car, in order to ask plaintiff "where he learned to drive." In the block between Derbigny Street and Claiborne Avenue, Hirsch caught up with Beaucoudray's automobile, and attempted to talk to him, and Beaucoudray deliberately pulled over in front of Hirsch's automobile, causing Hirsch to stop suddenly, with the result that Mrs. Hirsch's head was thrown forward and struck the windshield of the car. Hirsch stated that this "provoked me beyond words," and that he continued to follow Beaucoudray's automobile until the cars passed Charity Hospital, at which point Beaucoudray stepped on his accelerator and again pulled into the path of Hirsch's automobile, causing it to run upon the neutral ground. Beaucoudray's action, according to Hirsch, "infuriated me beyond words." Beaucoudray drove "one block beyond Saratoga" Street, and then circled the block one or two times and finally pulled into the parking lot on Gravier Street. Hirsch followed Beaucoudray to the parking lot, alighted from his car, and approached Beaucoudray, asking, "Where in the hell did you ever learn to drive a car?" Then the encounter took place.
The above narrative, as recited by Hirsch, is challenged in some details by Beaucoudray, but for the purposes of this opinion we will assume Hirsch's story to be true, which is a view most favorable to him.
In addition to his word that he was infuriated by Beaucoudray's driving, Hirsch's subsequent actions clearly show that he was in a bellicose mood. He resolutely followed Beaucoudray, although the latter, upon sensing that Hirsch was following him, endeavored to elude Hirsch by circling the block one or two times before entering the parking lot.
The parties disagree as to what actually happened in the parking lot. Hirsch claims he struck Beaucoudray with his open hand, but only after the latter raised his arm as though to strike Hirsch, Hirsch stating that he believed Beaucoudray intended to assault him. Beaucoudray denies that he raised his arm in a belligerent manner, and maintains that if he made any movement with his arm, he did so while glancing at his wrist watch to notice the time. We fail to see how Hirsch could have misinterpreted this movement on Beaucoudray's part. We are convinced that the latter made no attempt to strike Hirsch, and, moreover, if Beaucoudray did raise his arm, the parties were then fifteen feet apart.
Sifting all of the evidence, including the testimony of Mr. Seeberg, a disinterested bystander, we are led to the conclusion that as plaintiff parked his car in the lot and alighted therefrom, defendant came over to him and shouted, "Where in the hell did you ever learn to drive a car?" As Hirsch moved toward Beaucoudray, the latter said, "Don't hit me," or words to that effect, and endeavored to walk away, but Hirsch continued to follow him. A few steps farther, Hirsch grabbed Beaucoudray, swung him around, and punched him. The men then clinched, and Hirsch struck Beaucoudray one or two more blows with his fist.
There is disagreement as to whether Beaucoudray was thrown to the ground, and the evidence conflicts as to whether the affair was brought to an end through the intervention of Mrs. Hirsch or of the parking lot attendant. We deem these points unimportant, and further comment thereon is unnecessary.
Hirsch claims that Beaucoudray struck him, which the latter denies. Whether Beaucoudray struck Hirsch and caused damage to his clothing during the scuffle, is relatively unimportant. Even if Beaucoudray did strike Hirsch after the men grappled, we believe he was within his rights in doing so, as it cannot be said that a man should meekly take a thrashing from *772 an aggressor, and not endeavor to repel him.
It is argued on behalf of Hirsch that the deliberately reckless manner in which Beaucoudray drove his automobile was sufficient to cause any reasonable man to lose his temper, and that the court should take this into consideration in passing on the case.
That argument is fully answered by the following passage appearing in 6 C.J.S., Assault and Battery, § 17, page 807: "* * * no provocative acts, conduct, former insults, threats, or words, if unaccompanied by any overt act of hostility, will justify an assault, no matter how offensive or exasperating, nor how much they may be calculated to excite or irritate."
As aptly stated in Davis v. Robinson, 94 Ind.App. 104, 179 N.E. 797, 799: "* * * The reason for the rule is in sound morals and public policy which, as has been said, forbids any man from being his own `judge and executioner.'"
The affair took place at a busy time of the morning in the parking lot, and several persons were present and witnessed it. After the incident in the parking lot, plaintiff left to go to his company's office, where he is employed as a claim adjuster, to keep an appointment with one of the company officials. Beaucoudray claims that he reached the office late for the appointment, and that his shirt, necktie, and the lapel of his coat were torn; that his hair was disheveled, and there were several marks on his face, and he was in a very nervous condition. He testified that because of his nervousness he was unable to perform his duties, and a fellow employee advised him to see a doctor.
That afternoon, Beaucoudray was seen by Dr. J. Kelly Stone, who appeared as a witness in the case. Dr. Stone testified that Beaucoudray's blood pressure was a little higher than normal; that his face showed evidence of a contusion on the right side, two blotches on the left side, and slight abrasions three-fourths of an inch in length over the left zygomatic arch, and that Beaucoudray appeared to be in a highly nervous and upset state.
One of the items claimed is for damage to plaintiff's clothing, namely, his shirt, necktie, and suit. Counsel for appellant points to the fact that the clothing was not produced in court, and argues that an unfavorable inference against plaintiff is warranted. We do not think so. Beaucoudray explained that the tie was badly damaged, and that during the two-year period between the occurrence and the trial below, it somehow became lost. As to the shirt, he explained that the collar was badly torn, and that he did not bring it to court because he was not told to do so by his attorney. He had the suit repaired, and is now using it as a "hack suit." The amount claimed for clothing is $81.00.
The evidence is not clear as to how much plaintiff paid Dr. Stone. Beaucoudray made one visit to the doctor's office, and claims $25.00 for medical expenses. Dr. Stone stated that he believed his charge was between $3.00 and $5.00. In fairness to plaintiff, however, it should be said that Dr. Stone could not locate his records and was unable to say exactly the amount of his bill. He had no independent recollection of this detail.
Plaintiff's physical injuries, although slight, were sufficient to cause him to experience a stinging sensation in his face for a few days. Unquestionably, he must have suffered humiliation and embarrassment in a great measure at the parking lot. Great, also, must have been his embarrassment and humiliation in appearing at his office, especially for a meeting with one of his superiors, with marks upon his face and his clothing in a torn condition. It was Dr. Stone's opinion that the marks on Beaucoudray's face should have reached their maximum degree of noticeability within a few hours after being sustained. It is not difficult to conclude that the visible scars on plaintiff's face caused him inestimable embarrassment and mental anguish.
In cases of this kind, damages may be allowed not only for physical pain and suffering, but also for indignity and humiliation. Fontenelle v. Waguespack, 150 La. 316, 90 So. 662.
*773 In Naquin v. Billiott, La.App., 155 So. 261, the plaintiff was awarded $400.00 for damages caused by an unprovoked battery perpetrated upon him by defendant.
The judgment is for the sum of $350.00, and considering the record, together with the prevailing jurisprudence, we perceive no error in the judgment, as it does substantial justice.
The judgment appealed from is affirmed.
Affirmed.