YARRUT, Judge.
This is an appeal from the final judgment of the district court denying a new trial and reinstating the verdict of the jury as the final judgment of the court.
Plaintiff sued for personal injuries sustained when physically assaulted by the Defendant (a realtor) in the latter’s office where Plaintiff was employed as a salesman, around noon on Christmas eve, 1962. While Plaintiff was using the telephone in the office, Defendant, without warning, violently pulled the phone from Plaintiff and struck him in the nose. Defendant later returned, cursed and abused Plaintiff, and according to Plaintiff’s testimony, slapped him in the face. For this assault and injury Plaintiff seeks damages in the amount of $62,971.70.
The jury brought in a unanimous verdict for the Plaintiff for $15,500.00. Upon motion of Plaintiff the court made the jury’s verdict the judgment of the court.
Within the three-day period allowed by law (LSA-U.C.P. art. 1974) Defendant asked for a new trial. The district judge *733 granted the motion for a new trial, but later revoked it stating, in his written reasons, that he considered the award of $15,-500.00 excessive.
The chronological order of procedure was: On May 22, 1964, the jury brought in its verdict for Plaintiff for $15,500.00. The district judge made the verdict the judgment of the court and signed it. On May 27, 1964 (within three legal days), Defendant filed a motion for a new trial under LSA-C.C.P. art. 1974. On June 5, 1964, the district judge granted a new trial “for argument only on the question of quantum” which he considered excessive, indicating that he agreed with the verdict as to liability, and set the trial for July 7, 1964. On July 7, 1964, the district judge, without a new trial, reinstated the original judgment with his written reasons, referred to above.
Though he considered the award of damages excessive and another jury trial merely on quantum was not necessary, the judge signed the rule for a new trial (in reality a rehearing) to decide the issue of quantum; only later to find that the proper procedure was to seek a remittitur under LSA-C.C.P. art. 1813 but, since he had already signed the judgment, he believed it too late for the remittitur procedure.
In Jenkins v. American Auto Ins. Co., La.App., 111 So.2d 837, the court held it was too late to order a remittitur, under penalty of granting a new trial, once the judgment is signed. However, LSA-C.C.P. art. 1974 provides that a motion for a new trial can be made within three days after a judgment is signed. Accordingly, it is proper for a judge, who wishes to grant such a motion, the alternative to order a remittitur, under penalty of a new trial if the parties cannot agree on the quantum. LSA-C.C.P. art. 1813.
The first question before us is whether to (1) remand the case to the district court with instructions that the judge follow the remittitur provision of the Code of Civil Procedure; or (2) to decide the case here on the record as it stands now.
Since the jury’s verdict was unanimous and the trial judge apparently agreed with the jury’s finding of liability, leaving only the question of quantum for a new trial, it would not serve any useful purpose to remand the case for a new jury trial solely on the question of quantum. The ground for a new trial urged by Defendant is that the verdict is contrary to the law and evidence, not that the jury acted illegally or dishonestly, or was unduly influenced, or because of newly discovered evidence. Should the case be remanded for a trial solely on the question of quantum, either party would have the right, after such trial, to appeal both on liability and' quantum.
As a remand would work an undue hardship on the litigants, the witnesses and counsel, and further delay the administration of justice, we will consider and decide the case now on both the question of liability and quantum on the record, without a remand.
Regarding Defendant’s liability for Plaintiff’s injury, we agree with the district judge and jury, and find that the assault of Plaintiff upon Defendant was without provocation, and was attended by malice, as evidenced by Defendant’s return without provocation to slap Plaintiff after the initial assault, and at the same time reviling Plaintiff with vulgar epithets regarding his national origin, with a challenge to Plaintiff to fight, all in the presence and hearing of 30 persons in attendance at the Christmas party.
Regarding quantum, we agree with the trial judge that the award of $15,500.00 is excessive.
As a result of his injuries, Plaintiff was treated as an out-patient at the St. Bernard Medical Center for about a week and when his symptoms became more acute, he was admitted to Mercy Hospital where he re *734 mained for 19 days. Three months before he received the blow from Defendant, Plaintiff had suffered a nose fracture when a cabinet fell on his face. His nose healed but was refractured by the Defendant’s blow, the second injury being more painful because of the first, according to Dr. George D. Lyons, the ear, nose and throat specialist, who treated Plaintiff for both fractures. Plaintiff also suffered temporary disabilities, i. e., ecchymosis (black eyes) ; injury to the lachrymal glands causing tearing.
There was a difference of opinion between two medical experts as to whether Plaintiff actually suffered his most serious injury, a subdural hemotoma, described by doctors as a blood clot between the skull and the brain. Dr. Garcia Ollef, the neurosurgeon who treated Plaintiff, testified Plaintiff did have such a. clot, caused either by the second fracture or by the first fracture • and aggravated by the second, which caused Plaintiff to have extremely severe headaches requiring frequent administration of pain-killing drugs during his hospitalization. Dr. Donald E. Richardson, a neurosurgeon called by Defendant, testified that Plaintiff did not have a sub-dural hemotoma but that his headaches were psychosomatic, in origin. However, Dr. Richardson did not examine Plaintiff until 14 months.after the second fracture; and from the amount of the award it is obvious that the jury must have accepted Dr. Garcia Oiler’s diagnosis.
The blood clot has dissolved and the nose healed except for looseness and roughness of some bones, which can only be detected by palpation, 'manual examination, of the nose. Dr. Lyons testified that although any fracture impairs the nasal function to some extent, this impairment is not severe in Plaintiff’s case and that “he will do well with it.”
Concerning both lost wages,and pain and suffering, Plaintiff claims to have been incapacitated by severe headaches for months after his hospitalization. . However, Dr. Garcia Oiler described Plaintiff as ambulatory and greatly improved at the time of his discharge from the hospital. Plaintiff consulted Dr. Garcia Oiler only once after his discharge and, at that time, the doctor found Plaintiff practically recovered. (Because Plaintiff still complained of headaches, he advised him to see a psychiatrist but found him unreceptive to the idea.) Plaintiff consulted Dr. Lyons only twice after his discharge from the hospital, the first time being eleven months thereafter. Plaintiff claims to have seen a Dr. Abdo, an ear, nose and throat specialist, and Dr. John Garcia, his internist, for treatment of headaches, but there is no corroborating evidence in the record concerning the frequency or purpose of these visits.
Plaintiff obtained employment with another realtor 18 months after the accident, but did not earn any commissions with the second realtor for six to eight months. However, during the interim between his employment with Defendant and the second realtor, Plaintiff was engaged in the rental and real estate investment business. In view of this evidence, Plaintiff is entitled only to' one month’s wages, or $189.00, for the period of his hospitalization, being one-third of his three months earnings of $564.-48 while employed by Defendant.
Past expenses for doctors, hospitals, and drugs claimed by Plaintiff total $871.70. The only bills in the record are from Mercy Hospital for $526.70 and from St. Bernard Medical Center for $32.00. However, as Plaintiff testified to the amounts of the other bills, and Defendant does not challenge the amounts claimed for past medical expenses, we will allow it. However, Defendant does justifiably object to the $1,500 claim for future medical expenses, which were not substantiated, and therefore, should not be allowed.
Regarding excessiveness of the award, Defendant cites cases in which the awards for broken noses have ranged from $2,000 to $3,500. However, the cited cases involved simple negligence, not deliberate *735 and unprovoked personal assault and battery. In an action for assault and battery, damages are allowed both for physical pain and suffering, and for indignity and humiliation. Beaucoudray v. Hirsch, La.App., 49 So.2d 770. Moreover, in addition to the nose fracture, Plaintiff suffered the painful and incapacitating subdural hemotoma.
Accordingly, we have no doubt of the liability of Defendant for Plaintiff's injuries. There is ample testimony in the record to support the unanimous findings of the jury and the concurrence of the judge; hence, the judgment with respect to liability is affirmed. However, the verdict of the jury respecting quantum is amended and reduced from $15,500.00 to $9,060.70. As thus amended, the judgment is affirmed; each party to pay his own costs on appeal.
Judgment amended and affirmed.