Thomas **BAGGETT**

v.

**Charley B. RICHARDSON et al.**

**Civ. A. No. 69–283.**

United States District Court.
E. D. Louisiana.
May 19, 1972.

Lawrence K. Burleigh, Levy, Burleigh, Russo & Bourg, Morgan City, La., for plaintiff.

Victor H. Hess, Jr., Jackson & Hess, New Orleans, La., for defendants Marine Engineers Beneficial Association, AFL-CIO.

Wilfred H. Boudreaux, Jr., Dodd, Hirsch, Barker, Meunier, Boudreaux & Lamy, New Orleans, La., for Inland Boatmen's Union, Seafarers International Union of North America, AFL-CIO.

Robert J. Zibilich, New Orleans, La., for Charley B. Richardson.

Steven R. Plotkin, New Orleans, La., for James Martin.

## ORDER

R. BLAKE WEST, District Judge.

This suit for damages for personal injuries is the result of an alleged assault and battery committed on the person of plaintiff by defendants, Charley B. Richardson and James Martin, aboard the Tug TERESA F. on the night of December 11, 1968. Richardson's employer, the Seafarers International Union of North America (S.I.U.), and Martin's employer, the Marine Engineers Beneficial Association (M.E.B.A.), were also sued as defendants because of their alleged responsibility for the actions of Richardson and Martin based upon the doctrine of *respondeat superior*. Plaintiff was the captain of the TERESA F. and an employee of the tug's owner, Red Circle Towing Company.

On the basis of the factual findings of the Court set forth herein and in view of the controlling legal authorities, the Court holds that there should be a judgment in favor of plaintiff and against defendants, Charley B. Richardson and James Martin, *in solido*, in the amount of $3,000.00, and that there should be a judgment in favor of defendants, S.I.U. and M.E.B.A., dismissing plaintiff's claim against them.

The testimony of plaintiff and defendants, Richardson and Martin, concerning the events leading to the fracas in the captain's cabin aboard the TERESA F. on the night of December 11th, is, as might be expected, contradictory on almost all relevant points. Furthermore, despite the disclaimers by both plaintiff and defendant Martin, it is obvious to the Court, and the Court cannot but infer, that there was, to a pertinent degree, a background of "bad blood" between plaintiff and the defendant S.I.U. in general and defendant Martin in particular. This background, like the undersea part of an iceberg, is patently real and palpable, though, perhaps for reasons of enlightened self-interest, the parties have chosen to withhold it in substance from the record.

Few relevant facts are clearly established. Shortly after 10:45 o'clock on the night of December 11, 1968, defendants Richardson and Martin boarded the TERESA F. while it was moored at the premises of Red Circle Towing Company. They entered the galley, where Richardson remained briefly while Martin, for reasons not of record, went to Captain Baggett's cabin and knocked or banged on the door. A shouted and angry conversation, replete with the all too-familiar four-letter words, ensued. Thereafter, Martin entered the cabin, either on his own initiative, or after the door was opened by plaintiff. In any event, it was clear that Martin was anything but a welcomed visitor, because, according to Martin's own testimony, plaintiff ordered him off the vessel in unmistakably clear terms.

According to Martin, Baggett produced a piece of pipe. According to Baggett, the pipe was produced by Martin. In either event, a struggle ensued, during which, the Court holds that, as a matter of fact, Baggett hit Martin with the pipe with sufficient force to cut Martin above and to the outside of the left eye, cause profuse bleeding, and leave a rather impressive four-inch scar. Shortly thereafter Richardson entered the captain's cabin, found Martin and Baggett struggling over the pipe, Martin bleeding from the head. Thereafter, Richardson joined the fray, obtained possession of the pipe, and the conclusion is inescapable that Martin and Richardson delivered to Baggett a vicious, thorough, systematic and somewhat prolonged (5 to 10 minute) thrashing, and left him, shortly after 11:00 o'clock, unconscious in his cabin, with what Dr. Frensilli, who examined Baggett at 1:30 a.m. on December 12, 1968, described as multiple bruises of the face, neck, and body, and a closed, somewhat displaced fracture of the right ulna. It is apparent that the beating of plaintiff was loud and lengthy, that all persons aboard the TERESA F. at the time

abandoned ship, and that Mate Kershaw cowered under a table in the Red Circle office while the captain was being thrashed.

■ The alleged tort in the instant case occurred aboard the TERESA F. while she was moored and afloat in the Intercoastal Canal in New Orleans, Louisiana and was therefore a "maritime tort". Although it is a fundamental principle of maritime law of the United States that it is to be uniform throughout the country, ". . . even though admiralty suits are governed by federal substantive and procedural law, courts applying maritime law may adopt state law by express or implied reference or by virtue of the interstitial nature of federal law". Alcoa S.S. Co. v. Charles Ferran & Co., 383 F.2d 46, 50 (5 Cir., 1967). Thus, in cases in which the issues are not touched by maritime law and where state law fills the gap in a manner not destructive of the uniformity admiralty seeks, the relevant state law applies. Watz v. Zapata Off-Shore Co., 431 F.2d 100 (5 Cir., 1970); Alcoa S.S. Co. v. Charles Ferran & Co., *supra*; The S.S. Samovar, 72 F.Supp. 574 (S.D. Cal., 1947). A state ". . . may establish rules applicable on land and water within its limits, even though these rules incidentally affect maritime affairs, provided that the state action 'does not contravene any acts of Congress, nor work any prejudice to the characteristics of the maritime law, nor interfere with its proper harmony and uniformity in its international and interstate relations.'" Just v. Chambers, 312 U.S. 383, 389, 61 S.Ct. 687, 692, 85 L.Ed. 903, 908 (1941).

■ In the instant case, plaintiff and defendants couch their respective contentions primarily in terms of Louisiana law. Clearly, the application of Louisiana law in this case will not contravene any Acts of Congress, nor work any prejudice to the characteristics of the maritime law, nor interfere with its proper harmony and uniformity. Furthermore, the areas of tort law dealing with assault and battery and *respondeat superior* apparently are uniformly treated throughout the fifty states, and the law of Louisiana in these areas is representative of the law throughout the states.

■ The rule is well-established in Louisiana jurisprudence that when one, though first acting in self-defense, resorts to excessive violence and unnecessary force in repelling an assault, he becomes liable as an aggressor and is subject to an action for damages for assault and battery. Murray v. Dominick, 236 So.2d 626 (La.App.1970); Gallagher v. Taylor, 203 So.2d 773 (La.App.1967); Bauman v. Heausler, 188 So.2d 189 (La. App.1966); Bethley v. Cochrane, 77 So. 2d 228 (La.App.1955).

"It is . . . well settled that, even where there is an aggressive act, justifying a battery, the person retaliating may use only such force as is necessary to repel the aggression; and that if he goes beyond this, using force in excess of what would have been reasonably necessary, he is liable for damages for injury caused by the employment of such unnecessary force." Tripoli v. Gurry, 253 La. 473, 474, 218 So.2d 563, 564 (1969). Each case depends upon its own particular facts and circumstances. Tripoli v. Gurry, *supra*. "The yardstick of the reasonable, prudent man is, generally speaking, the judicial tool used to measure whether the force used to repel the attack was excessive." Wilson v. Dimitri, 138 So.2d 618, 621 (La.App.1962).

It is obvious, if one person could use unwarranted force in repelling the attack of another, that two persons could likewise use unwarranted force in repelling an attack upon one of them by another and that both may be liable to the original attacker for damages caused by the use of unnecessary force. See Mut v. Roy, 185 So.2d 639 (La.App.1966).

■ Under the facts found by the Court, the Court concludes that, although it is probable that plaintiff struck the first blow when he hit Martin with the pipe, the conduct thereafter of

Martin and Richardson clearly constituted grossly excessive force in overcoming plaintiff's aggression and that plaintiff is entitled to damages from Richardson and Martin.

■ Counsel for plaintiff strenuously argues that the defendant unions are answerable in damages to plaintiff under the doctrine of *respondeat superior* for the willful torts of their employees, who were acting in the course and scope of their employment while aboard the TERESA F. Alpha S.S. Corp. v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086 (1930); Casbon v. Waterman Steamship Corporation, 274 F.Supp. 481 (E.D.La., 1967). However, plaintiff's evidence on the point amounted to no more than a suggestion which might lead to a suspicion (however compelling) that Richardson and Martin were acting on behalf of their respective unions; there was no satisfactory proof that the individual defendants were in the course and scope of their union jobs. Since plaintiff failed to carry his burden of proving that Richardson and Martin were in the course and scope of their employment, the Court need not consider the additional defense of the defendant unions that they are entitled to protection on the basis of Section 6 of the Norris-LaGuardia Act (29 U.S.C. § 106).

■ Plaintiff was admitted to Algiers General Hospital on the morning of December 12th by Dr. Frensilli, an orthopedic surgeon. As stated above, he was bruised about the head, neck, and body; however, his single disabling injury was a fracture of the right ulna near the elbow.

On December 16th, Dr. Frensilli, while plaintiff was under general anesthesia, attempted to fuse the fracture by means of a metal screw, and, when the screw broke during the operational procedure, he accomplished his mission by joining the fractured parts of the bone by use of a wire and placed a cast over plaintiff's lower arm and elbow. Plaintiff remained in the hospital until December 22, 1968, during which period he undoubtedly suffered pain.

On December 22nd, Dr. Frensilli discharged plaintiff to another physician and did not see plaintiff again until eight weeks after surgery, at which time he removed the cast and found that there was tenderness over the incision, that the wire was palpable, and that plaintiff's elbow and arm lacked 15 to 30 degrees of flexion and 20 degrees of extension and 20% of supination and pronation. The doctor stated that the wire was removed from plaintiff's arm by some other physician some six months after the operation. He stated that, in his opinion, plaintiff would suffer some residual disability of the arm—mainly due to pain upon exertion—but was unable to prognose any degree of permanent disability with reasonable certainty. It is the Court's opinion that there was no satisfactory proof of any important degree of permanent disability of the right arm.

Plaintiff's employer paid his full wages during his disability after which he returned to his former duties, and there is no claim for loss of wages past or future. Furthermore, no claim is made for medical expenses. Therefore, plaintiff's recovery is limited to damages for physical and mental pain and suffering and temporary disability, for which the Court holds that plaintiff will be adequately compensated by an award in the amount of $3,000.00.

■ Plaintiff contends that punitive damages should be awarded because the egregious nature of Richardson's and Martin's actions properly serve as a basis for the award of such damages under both the admiralty law and the law of Louisiana, citing Petition of Den Norske Amerikalinje A/S, 276 F.Supp. 163 (E.D.Ohio, 1967); Mancuso v. Treadaway, 176 So.2d 731 (La.App.1965). However, assuming, *arguendo*, the correctness of plaintiff's contention that punitive damages are recoverable under both the admiralty law and under Louisiana law, the Court is of the opinion

that punitive damages should not be awarded plaintiff because he was probably the original aggressor (or, if Martin's acts on entering the captain's cabin made him the original aggressor, Baggett's blow with the pipe constituted excessive force in overcoming *that* aggression). See Brazil v. McCray, 96 So.2d 887 (La.App.1957).

For the foregoing reasons there should be judgment herein in favor of plaintiff Thomas Baggett and against defendants Charley B. Richardson and James Martin, *in solido*, in the amount of $5,000.00, plus all costs and legal interest from date of judicial demand; and there should be judgment in favor of defendants, Marine Engineers Beneficial Association, AFL-CIO, and Inland Boatmen's Union, Seafarers International Union of North America, AFL-CIO, and against plaintiff Thomas Baggett, dismissing the claim of Thomas Baggett against these defendants.

Let judgment issue accordingly.