### JONES v. LYKES BROS. STEAMSHIP CO., Inc.

No. 245, Docket 22665.

United States Court of Appeals Second Circuit.

Argued May 5, 1953.

Decided June 4, 1953.

Arthur M. Boal, New York City, Tompkins, Boal & Tompkins, New York City, for the appellant.

Silas Blake Axtell, New York City (Martin G. Stein, New York City, of counsel), for the appellee.

Before SWAN, Chief Judge, and L. HAND and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The defendant appeals from a judgment in favor of a seaman for personal injuries, arising from an assault by a fellow seaman aboard the defendant's ship, of the crew of which the plaintiff and his assailant were both members. The plaintiff also appeals because of the inadequacy of the damages, and raises the question whether the action should have been tried as a suit in the admiralty; but, since we are holding that the complaint should have been dismissed because the plaintiff did not prove any claim either under the Jones Act,[1] or the maritime law, it will not be necessary to notice his appeal. The action was tried to a judge without a jury, and the appeal has been prosecuted upon his findings of fact. The plaintiff and Hunter, his assailant, were firemen and shared quarters in the forecastle; they had been together on the ship for more than four months and had apparently been on friendly terms. Although "on a single occasion in the Philippines Hunter had an argument with a fellow member, * * * no blows were struck by either"; nor was there any evidence that he was a man of unusual truculence except as appeared from the circumstances of the assault itself. These the judge found in the following words. "On the evening of the assault, May 25, 1949, when the ship had returned to Galveston, Texas, plaintiff and Hunter had a can of beer together ashore and left each other under amicable circumstances. Plaintiff returned to the ship and went to sleep since his watch did not begin until 12 midnight. He reported for duty in the fireroom of the S. S. Frederick Lykes at a few minutes before midnight.

Hunter, who had the 8 to 12 watch in the same fireroom, told him everything was in order and left, presumably for his quarters. Plaintiff did not find everything in order. There were no notations on the blackboard concerning the tips in the burner and some oil had been spilled on the deck. The ship was being maneuvered to go upstream to Houston. Plaintiff inquired of the junior engineer what size tips Hunter had used and got no satisfactory response. A few minutes later Hunter returned to the fireroom and shouted some vile remarks at plaintiff. Hunter told plaintiff that he had been firing long enough to know where things were. This argument was broken up by the chief engineer, who told Hunter to go back to his quarters. No blows were struck—in fact there was no physical contact at all. Later that same morning after the plaintiff had completed his watch and returned to his quarters he was suddenly and without provocation beaten by Hunter. As a result plaintiff sustained severe injuries to his hip." From these facts the judge concluded that, although there was no ground for imputing liability to the defendant because of any negligence in taking on Hunter, the evidence did disclose a breach of the conceded duty of the defendant, as ship owner, to outfit a "seaworthy" ship, including a "seaworthy" crew. The warranty, he agreed, did "not cover all injuries sustained by a seaman at the hands of a fellow crew member"; as for example, a justified assault in self-defence, or even "an assault unjustified, yet sufficiently provoked," nevertheless, since the evidence did not present "the situation of a justified or sufficiently provoked intentional battery," the defendant's warranty covered the injury.

We held very recently that the warranty of seaworthiness of the ship to the crew included their individual "disposition and seamanship";[2] but we cannot agree that the situation at bar is within this doctrine, else it would follow that a ship owner is liable for any injuries resulting from every sailors' brawl. The warranty is in-

1. § 688 Title 46 U.S.C.A.

2. Keen v. Overseas Tankship Corp., 2 Cir., 194 F.2d 515.

deed unconditional, as is the warranty of the ship herself and her gear; but it means, as we said, not that a "seaman is competent to meet all contingencies; but that he is equal in disposition and seamanship to the ordinary men in the calling." All men are to some degree irascible; every workman is apt to be angry when a fellow complains of his work to their common superior; and some will harbor their resentment and provoke a quarrel over it even after the lapse of several hours. Sailors lead a rough life and are more apt to use their fists than office employees; what will seem to sedentary and protected persons an insufficient provocation for a personal encounter, is not the measure of the "disposition" of "the ordinary men in the calling." It is true that Hunter continued to strike—"pound"—the plaintiff after he was down; but when a man's blood is up, he will go farther than he should; and Hunter later relented and showed some contrition. Such a set-to seldom results in serious injury, when only fists are used, and we are to judge Hunter's disposition, not by the fact that the plaintiff broke his hip, but by what would ordinarily follow from what he did.

In other decisions of this sort the assault has been either with a weapon, or the assailant has been independently shown to have been exceptionally quarrelsome, or worse. Thus in Keen v. Overseas Tankship Co., supra, 194 F.2d 515, he savagely attacked the plaintiff with a meat cleaver; in Kyriakos v. Goulandris, 2 Cir., 151 F.2d 132, 135, he was proved to have been "of such savage and uncontrolled disposition, and so easily provoked, as to be a danger to men who worked on the same ship", and he had already "assaulted more than one man". In The Rolph, 9 Cir., 299 F. 52, 55, the mate was a man "known to give vent to a wicked disposition by violent, cruel, and uncalled for assaults upon sailors." In Koehler v. Presque-Isle Transportation Co., 2 Cir., 141 F.2d 490, the jury found by special verdict that the assailant was "of a vicious and belligerent nature likely to inflict bodily harm upon other members of the crew." We are not satisfied that the findings proved that Hunter was a man un-

fit to serve, judged by the usual standards of the calling.

Judgment reversed, complaint dismissed, without costs.