Joseph **WALTERS**, Plaintiff-Appellant,

v.

**MOORE–McCORMACK LINES, INC.,**
Defendant-Appellee.

**No. 15, Docket 27473.**

United States Court of Appeals
Second Circuit.

Argued Oct. 3, 1962.

Decided Oct. 23, 1962.

Irving L. Kaye, New York City, for plaintiff-appellant. Benjamin H. Siff, New York City, of counsel.

Burlingham, Underwood, Barron, Wright & White, New York City, for defendant-appellee. William M. Kimball, New York City, of counsel.

Before LUMBARD, Chief Judge, and FRIENDLY and KAUFMAN, Circuit Judges.

**192**

KAUFMAN, Circuit Judge.

The plaintiff brought an action in the United States District Court for the Southern District of New York to recover from his employer, Moore-McCormack Lines, Inc., damages for injuries resulting from a shipboard fight.[1] His plea for recovery was based upon allegations of unseaworthiness and of negligence in hiring. After all the evidence on the issue of liability had been presented to the jury, Judge McGohey, upon motion, ordered a directed verdict for the defendant because there had been a failure of proof on both theories of liability. The plaintiff appeals from the judgment entered upon the directed verdict.

We affirm the judgment of the District Court.

The plaintiff, on November 26, 1958, was employed by the defendant as a messman aboard the S. S. Brazil, where he served meals to the members of the deck department. One member of that department was George Shannon, a fire patroller, who was present in the messroom at some time between 4:30 p. m. and 5:00 p. m. of November 26, 1958, preparing for his supper. On that evening, plaintiff took Shannon's order for roast beef, melon, and potato. When Walters returned to the table with Shannon's food, Shannon asked him where the corn was and Walters replied that he had not ordered any. Shannon then exclaimed, "You call me a liar?" and demanded that his corn be brought to him, employing some of the indelicate language not uncommon to the hardy seafarer. Plaintiff, detecting Shannon's growing annoyance, withdrew to the galley where he picked up some other orders as well as Shannon's order of corn. As Walters approached his table with both hands laden, Shannon leaped up and once again exclaimed, "You call me a liar," and with this, he struck the plaintiff in the face, causing the dishes in his hands to crash to the deck. Shannon continued to strike the plaintiff's face with his fists and then struck him a "karate" blow on the right

side of the neck. The plaintiff, some thirty pounds lighter than Shannon, fell to the deck, and Shannon leaped upon him continuing furiously to strike him. Other members of the crew in the messroom shouted, "Why don't you people stop that man before he kills this man?" and "Don't get up. If you get up he'll kill you. He's mad." A doctor and nurse soon came and Walters was taken away on a stretcher. Such is the plaintiff's version of the incident.

The defendant's version reveals that, as in so many cases, much depends upon who is telling the story. Shannon testified that he ordered the corn, plaintiff failed to bring it, Shannon then asked for it again, and Walters sarcastically replied "You've got an hour to eat." Walters left the table, and when he returned, and Shannon again inquired about his corn, the plaintiff retorted with an obscenity. Shannon, incensed, "went after him" and struck the plaintiff with his fists two or three times in the face but at no time while plaintiff was lying on the deck.

There was uncontested testimony that Walters did not return any of the blows. It was further uncontradicted that Shannon quickly repented and sought to aid the injured messman. He handed Walters a towel to use to stem the flow of blood from a cut under his eye. One witness testified that Shannon "tried to wipe" Walter's face with it.

## I.

The plaintiff urges that there was sufficient evidence to go to the jury on the issue of unseaworthiness of the defendant's vessel. He submits that from the evidence offered in his behalf, a jury could reasonably infer that Shannon was unequal in disposition and temperament to the ordinary seaman.

■■ The law is clear that if a crew-member possesses a vicious disposition or savage nature, his presence on board ship may merit a jury finding that the defendant had breached its warranty of

1. Jurisdiction was based upon the Jones Act, 46 U.S.C. § 688 (1958).

seaworthiness.[2] See Boudoin v. Lykes Bros. S. S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354, modified, 350 U.S. 811, 76 S.Ct. 38, 100 L.Ed. 727 (1955); Keen v. Overseas Tankship Corp., 194 F.2d 515 (2d Cir.), cert. denied, 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363 (1952); Bartholomew v. Universe Tankships, Inc., 168 F.Supp. 153 (S.D.N.Y.1957), aff'd, 263 F.2d 437 (2d Cir.), cert. denied, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed. 2d 1030 (1959). Seamen's brawls are not uncommon, either on board ship or off. The confinement of the ship's frame, the forced continuous interaction of the members of a crew, the cramped living conditions, the ennui which often accompanies shipboard routine, are factors which often induce conditions which enflame those who possess short tempers and occasionally even those reputed for even-temperedness. It would be unreasonable and unwise to find unseaworthiness whenever an irascible crewmember engaged in a shipboard brawl with a colleague. The shipowner warrants that his ship is seaworthy to the extent that the members of the crew are of a disposition common to the ordinary man in the calling. That "ordinary man", as we have seen, lives under conditions quite "extraordinary" when viewed through the eyes of the landlubber. As Judge Learned Hand observed,

> "Sailors lead a rough life and are more apt to use their fists than office employees; what will seem to sedentary and protected persons an insufficient provocation for a personal encounter, is not the measure of the 'disposition' of 'the ordinary man in the calling.'" Jones v. Lykes Bros. S. S. Co., 204 F.2d 815, 817 (2d Cir.), cert. denied, 346 U.S. 857, 74 S.Ct. 72, 98 L.Ed. 370 (1953).

The seaman, in a sense, accepts the risk of encountering crewmembers whose disposition may be more irascible than his own but which can not be deemed so savage that shipboard life becomes a menace.

■ As in every personal injury case, where the court and jury deal with issues of fault or of unreasonable conduct, there are problems present here of definition, of line-drawing.

> "The problem, as with many aspects of the law, is one of degree. Was the assault within the usual and customary standards of the calling? Or is it a case of a seaman with a wicked disposition, a propensity to evil conduct, a savage and vicious nature? If it is the former, it is one of the risks of the sea that every crew takes. If the seaman has a savage and vicious nature, then the ship becomes a perilous place." Boudoin v. Lykes Bros. S. S. Co., 348 U.S. 336, 340, 75 S.Ct. 382, 385, modified, 350 U.S. 811, 76 S.Ct. 38 (1955).

Judge McGohey, in withholding the case from the jury, properly found that as a matter of law, Shannon's attack upon the plaintiff did not render the ship unseaworthy even if the plaintiff's version of the attack is accepted. We agree, and hold that a verdict for the defendant was properly directed on the issue of unseaworthiness.

In those assault cases in which the issue of unseaworthiness has been held properly submissible to a jury, the hallmark has been either an assault with a dangerous weapon or independent evidence of the assailant's exceptionally quarrelsome nature, his habitual drunkenness, his severe personality disorder, or other similar factors.[3] The plaintiff has offered for our consideration several cases in which it was held that there was ample evidence to warrant a finding of breach of warranty of seaworthiness because of crewmember's vicious disposi-

---

2. This liability does not depend upon the existence of notice or prior knowledge by the shipowner of its crewmember's vicious disposition. See Keen v. Overseas Tankship Corp., 194 F.2d 515 (2d Cir.), cert. denied, 343 U.S. 966, 72 S.Ct. 1061 (1952).

3. See Jones v. Lykes Bros. S.S. Co., supra, 204 F.2d at 817, and the cases there cited.

tion; but, we find none of compelling precedent for us. In Keen v. Overseas Tanking Corp., 194 F.2d 515 (2d Cir.), cert. denied, 343 U.S. 966, 72 S.Ct. 1061 (1952), the plaintiff was attacked with a meat cleaver by an individual who was portrayed at trial as "a drunken, dirty, quarrelsome seaman, who * * * habitually had possession of deadly weapons * * *." In Boudoin v. Lykes Bros. S. S. Co., supra, the assailant, characteristically belligerent and inebriated, struck the plaintiff with a brandy bottle and returned later to finish his work with a large knife. Thompson v. Coastal Oil Co., 119 F.Supp. 838 (D. N.J.1954), rev'd on other grounds, 221 F.2d 559 (3rd Cir. 1955), aff'd, 350 U.S. 956, 76 S.Ct. 345, 100 L.Ed. 832, rehearing and reversal, 352 U.S. 862, 77 S.Ct. 90, 1 L.Ed.2d 73 (1956), presents the unsavory portrait of an individual characterized by the court as a "homicidal paranoiac" with "truly vicious propensities" attacking a fellow crewmember from behind with a meat cleaver. Finally, the assailant in Bartholomew v. Universe Tankships, Inc., 168 F.Supp. 153 (S.D. N.Y.1957), aff'd, 263 F.2d 437 (2d Cir.), cert. denied, 359 U.S. 1000, 79 S.Ct. 1138 (1959), had a history of assaults on other seamen.

Thus, we note that even in the dangerous-weapon cases called to our attention, there had been evidence of a background of character traits or personality disorders from which a jury could properly find that the assailant was possessed of a vicious character. In the case before us, we need not rest our holding upon the absence of a dangerous weapon, for aside from the unfortunate instant encounter, there is no evidence to support a finding of a background of even mildly unusual character on the part of Shannon, let alone a vicious and savage one. While it is true that in 1936, Shannon, along with other individuals, entered a plea of guilty to an assault charge arising from a maritime labor dispute and received a six-month sentence with time off for good behavior, he was employed by the defendant in 1938, and served

without incident for twenty years, until the date of this shipboard fracas. There was no testimony whatever of any previous display of ill temper by Shannon.

We do not pass on whether there can not be an assault that is of such a vicious nature as to warrant a finding that the assailant had a character which rendered the ship unsafe, even if he does not use a dangerous weapon. But, we have been presented with no such case in the dispute here in litigation. It is true that the evidence most favorable to the plaintiff reveals that Shannon pummeled Walters after he had fallen to the messroom floor. But, in a similar case, Judge Learned Hand said, "[W]hen a man's blood is up, he will go farther than he should; and [the assailant] * * * later relented and showed some contrition. Such a set-to seldom results in serious injury, when only fists are used * * *." Jones v. Lykes Bros. S. S. Co., supra, 204 F.2d at 817. The evidence, at its best, reveals that Shannon was a man of temperament ordinary for a seaman, whose blood was raised an ordinary degree by an ordinary seaman's altercation precipitated by the language so much a part of the seaman's life. Shannon also exhibited contrition, which Judge Hand found so compelling in Jones.

## II.

In addition to his allegation of unseaworthiness, the plaintiff's complaint contained allegations of negligence on the part of the defendant and its servants; apparently it was intended that these latter allegations be brought within the rubric of the Jones Act, 46 U.S.C. § 688 (1958). Judge McGohey, in ruling on the defendant's motion for a directed verdict, stated that there was insufficient evidence to warrant any finding that Moore-McCormack had been negligent in hiring and retaining the services of Shannon. The plaintiff has not contested this issue on appeal, but presents us with a theory of negligence by respondeat superior which was not formally raised in the court below. The theory merits brief discussion, however,

since Judge McGohey made passing reference to it while explaining to the jury the reasons for his directing the verdict.

■ The Supreme Court has held that a willful attack by a seaman upon an inferior in order to further the interests of the employer is a species of "negligence" for which the Jones Act makes the employer liable. See Alpha Steamship Corp. v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086 (1930), and its companion case, Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082 (1930). The test to be employed is whether the attack was with the intention of furthering the personal interests of the assailant or the interests of the employer. See Nelson v. American-West African Line, Inc., 86 F.2d 730, 731 (2 Cir. 1936) (L. Hand, J.). Plaintiff has made a valiant effort to bring his case within the rule of law established by the Alpha Steamship case and related cases. That rule has been summarized as follows:

> " * * * under the doctrine of respondeat superior there is no liability for a wrongful assault committed by one employee on another unless the assault is committed, whether wisely or unwisely, in furtherance of or in an attempt to further the master's business or in other words in connection with some act which an assaulter is authorized to do for the master. In any case where the act is merely a wanton and wilful act done to satisfy the temper or spite of the employee, the master is not liable. * * * In each of [the earlier] * * * cases the assault was by a superior officer upon a subordinate employee whom the assailant had the power and authority to direct, control and discipline. * * * None has held the master liable where as here the assault occurred as the result of anger over matters having nothing to do with the exercise, over the assailed, of authority delegated by the master to the assailant in the discharge of duties with which the

master had charged him." Lykes' Bros. S. S. Co. v. Grubaugh, 128 F. 2d 387, 391 (5th Cir. 1942).

This Court has held that liability by respondeat superior for an intentional act has been imposed only in cases "where a superior officer assaulted an inferior in the prosecution of the ship's work. Indeed, there is some authority that the principle does not apply where the person committing the assault had no authority over the one injured." Kable v. United States, 169 F.2d 90, 92 (2d Cir. 1948). See Yukes v. Globe S. S. Corp., 107 F.2d 888 (6th Cir. 1939).

■ Not only were Shannon's duties on board ship unassociated with the conduct of the messroom and his official position unrelated to that of Walters, but the evidence clearly established that Shannon's attack was motivated by personal spleen and nothing more. Plaintiff's own version was that Shannon accompanied his leap from the table with the exclamation, "You call me a liar". Shannon's intentions were obviously the vindication of his personal integrity. Consequently, we must conclude that the assault was not committed for the benefit of the defendant, and the verdict was properly directed for the defendant.

Affirmed.

FRIENDLY, Circuit Judge (dissenting).

As we must all agree, Walters is entitled to recover if Shannon had "a wicked disposition, a propensity to evil conduct, a savage and vicious nature", but not if the latter perpetrated only an "assault within the usual and customary standards of the calling." Boudoin v. Lykes Bros. S. S. Co., 348 U.S. 336, 340, 75 S.Ct. 382, modified 350 U.S. 811, 76 S.Ct. 38 (1955). Walters submitted evidence, of which more below, designed to show that Shannon's assault was of a degree of violence outrunning "the usual and customary standards of the calling" and indicating "a wicked disposition" etc. Defendant denies that the facts were as Walters and his witnesses testi-

fied and argues also that, in view of the absence of evidence of previous or subsequent misbehavior by Shannon, the inference of a wicked disposition should not be drawn even if they were. These would seem to me the kinds of issue which, under the Jones Act, 46 U.S.C. § 688, a jury ought to try.

My brothers conclude they are not, because in those seamen's assault cases that have been held to warrant submission to a jury on a claim of unseaworthiness, "the hallmark has been either an assault with a dangerous weapon or independent evidence of the assailant's exceptionally quarrelsome nature, his habitual drunkenness, his severe personality disorder, or other similar factors." "The tendency of the lawyer," Lord Devlin has reminded us, "is always to codify," Samples of Lawmaking (1962), 47. In some ways this is highly useful—by stating that a case exhibiting any one of a list of factors is suitable for submission to the jury, appellate courts save time and trouble both for the trial courts and for purposes of review. It is quite another matter when such a catalogue is deemed exclusive. Appellate prescience can hardly anticipate all the syndromes whence the conclusion of "a savage and vicious nature" may properly be drawn. The same reason that makes it legitimate for a jury to draw such a conclusion from the mere fact that the assault is with a dangerous weapon—namely, the permissible inference that the intent was not merely to brawl but to maim or even kill—may likewise apply when the assault bears other indicia of viciousness. My brothers seem to go at least part of the way toward recognizing this; they "do not pass on whether there can not be an assault that is of such a vicious nature as to warrant a finding that the assailant had a character which rendered the ship unsafe, even if he does not use a dangerous weapon." I think we are obliged to pass on this question, to answer in the affirmative, and to hold this to be such a case.

Taking plaintiff's version of the incident as we must,[1] Shannon's attack was wholly unprovoked, was directed against a man thirty pounds lighter whose hands were filled with dishes, was carried out with great force, was pursued in the absence of any defense to the point of a paralyzing strike at the neck, and then was continued after Walters had fallen, in Easom's words, "like he [Shannon] was a maniac or something and panting and just looked like he was going to kill the man." I take it my brothers would have to agree that if, on the next day, Shannon had assaulted another seaman, Walters II, even in a much less violent fashion and with less serious consequences, the incident to Walters I would be enough for Walters II to get to the jury although the incident to Walters II considered alone would not. This seems to me exceedingly curious even in a field of law where the differing results often appear unrelated either to the exigency of the needs of plaintiffs or the quality of the conduct of defendants. That the shipowner knew or had reason to know of the assailant's viciousness is, we must remember, no part of the plaintiff's case. See Keen v. Overseas Tankship Corp., 194 F.2d 515 (2 Cir.), cert. denied, 343 U.S. 966, 72 S.Ct. 1061 (1952). Yet, under today's decision, the victim of a truly vicious attack cannot recover because the jury is not permitted to find the attacker was vicious, although, because of his misfortune, the subject of a less vicious one can! If the peculiar viciousness of an attack is enough evidence of "a wicked disposition" etc. to send a second milder incident to the jury, I think it is enough to send the first. If it were argued that the jury ought not be permitted to make such a finding in either case without the aid of expert psychiatric testimony, Salem v. United States Lines Co., 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962), seems to answer that. In the related field of incompetent personnel, I should suppose that a single act sufficiently egregious, for ex-

---

[1]. It was corroborated in considerable degree by three other witnesses, Bikel, Felix and Easom.

ample, a master's leaving the bridge in charge of a cabin boy on a foggy night, would warrant submission of the issue of unseaworthiness to a jury, although a mere error of judgment, even though negligent, would not.

In Jones v. Lykes Bros. S. S. Co., 204 F.2d 815 (2 Cir. 1953), relied on by the majority, the district judge had construed the recently decided case of Keen v. Overseas Tankship Corp., supra, as imposing liability for unseaworthiness in the case of every assault save when the attack was in defense of one's self or others or upon sufficient provocation, 108 F.Supp. 323, 326–327 (S.D.N.Y.1952). Such a reading quite clearly went too far. Jones' brief on appeal sought to sustain the judgment primarily on grounds of negligence, specifically "that the employer is liable for the negligent act of the employee in breaching its obligation to keep the peace * * *." According to his testimony Jones fell from a single blow to the cheekbone, following on a series of altercations between Hunter and himself, and the point that viciousness on the part of Hunter could properly be inferred from the "pounding" after Jones was down was not argued in Jones' brief. If the Jones decision is not thus sufficiently distinguished, I should have to regard it as inconsistent with the illumination later shed by the Supreme Court in Boudoin, despite the approving citation there of some of Judge Hand's language in Jones.

It may well be that, as was suggested at the argument, a reversal here would have the practical effect of sending every injury from a seaman's brawl to the jury, since, to put the matter politely, a plaintiff's recollection tends to evolve in a direction favorable to his interests. But that is no basis for our refusing to follow announced principles to their logical conclusion, even though it may increase the need for Congress' accomplishing the revision of the law in this area that is so long overdue. See Mr. Justice Harlan, dissenting, in Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 572–573, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).

I would reverse.