Franco C. **ROBINSON**, Appellant,

v.

**S.S. ATLANTIC STARLING, etc., et al.,**
Appellees.

No. 23105.

United States Court of Appeals
Fifth Circuit.

Dec. 2, 1966.

---

Samuel C. Gainsburgh, New Orleans, La., for appellant.

Frank S. Normann, Normann & Normann, New Orleans, La., for appellees.

Before THORNBERRY and COLEMAN, Circuit Judges, and YOUNG, District Judge.

THORNBERRY, Circuit Judge:

This is an action by appellant, former captain of the S. S. Atlantic Starling, against the vessel's corporate owner, based upon the Jones Act, 46 U.S.C.A. § 688, and general maritime law. Appellant's complaint contained counts alleging both negligence and unseaworthiness of the vessel. The district court, sitting without a jury, ruled against appellant in both respects. On this appeal, appellant complains only of the failure of the court to find the vessel unseaworthy.

The events which gave rise to the present legal action occurred during a voyage which began in Mobile, Alabama, in August, 1960. On December 29, 1960, while the vessel lay anchored in the harbor of Iloilo, Philippine Islands, appellant was stabbed in the abdomen by the officer's messman, Carlos Contreras. Appellant immediately drew a revolver which he carried on his person and fired upon the fleeing Contreras, who jumped overboard and swam ashore.

Concerning the circumstances leading up to the stabbing, the district court found:

> During the voyage libellant [appellant] carried a loaded revolver on his person at all times, cursed the members of the crew frequently, served the crew inedible and inadequate meals, accused the crew of various illegal acts, withheld money from them at various ports, sailed on several occasions, leaving crew members stranded in foreign ports, and had crew members arrested

while in port on liberty, all without just cause.

Libellant went so far as to physically abuse members of the crew and longshoremen brought aboard the vessel to work.

Libellant was particularly abusive to the officer's mess man, Carlos Contreras, frequently cursing and abusing him and referring to him as a "dog," "Chilean Red" and "Communist dog." He cancelled Contreras' allotment and denied him liberty in port.

\*　　\*　　\*　　\*　　\*　　\*

The record is replete with examples of libellant's complete disregard for the rights and safety of the members of the crew and his frequent abuse and berating of the crew members in general, and Carlos Contreras in particular.

The district court felt that the above-enumerated circumstances precipitated the assault by Contreras. Based upon the evidence, the district court also concluded that Contreras was a "quiet, peaceful, efficient seaman \* \* \* [and] was equal in disposition and seamanship to the ordinary men in the calling."

■ ■ A vessel owner may be held liable in damages for wilful injuries inflicted upon one member of the ship's crew by another member who is not equal in disposition and temperament to the "ordinary men in the calling." This liability is based upon the concept that the presence of "a seaman with a wicked disposition, a propensity to evil conduct, [and] a savage and vicious nature" renders the vessel unseaworthy. Boudoin v. Lykes Bros. S. S. Co., 1955, 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354; McConville v. Florida Towing Corp., 5th Cir. 1963, 321 F.2d 162; Jones v. Lykes Bros. S. S. Co., 2nd Cir. 1953, 204 F.2d 815, cert. den. 346 U.S. 857, 74 S.Ct. 72, 98 L.Ed. 370. Furthermore, the question of whether the assaulting crew member is "not equal in disposition and seamanship to the ordinary men in the calling" is a question of fact. Clevenger v. Star Fish & Oyster Co., 5th Cir. 1963, 325 F.2d 397, 402.

■ Appellant, however, relying upon Clevenger v. Star Fish & Oyster Co., supra, asserts that this Court should hold that as a matter of law the presence of Contreras rendered the S. S. Atlantic Starling unseaworthy. This we decline to do. The evidence in the record clearly substantiates the findings of the district court concerning the temperament of Contreras. This is particularly true since the judicial standard for a seaman's shipboard conduct is more liberal than that required of the ordinary man ashore. See Walters v. Moore-McCormack Lines, Inc., 2nd Cir. 1962, 309 F.2d 191, 193; Boorus v. West Coast Trans-Oceanic S.S. Line, 9th Cir. 1962, 299 F.2d 893; Jones v. Lykes Bros. S.S. Co., supra. It is furthermore apparent from the evidence that appellant was, to a large degree, responsible for his own injury.

The holding of this Court in the *Clevenger* case in no way dictates a contrary result. The decision in that case was predicated upon the fact that the district court had applied erroneous criteria in deciding the unseaworthiness issue. Furthermore, the assault there involved was of a much more shocking nature. In that case, the libellant, Clevenger, was on deck unloading the vessel's catch. Whitaker, the first mate, was in the hold below. There was a delay in the unloading operation and the two men "exchanged seamen's unpleasantries. Then, without a word of warning, Whitaker climbed a ladder to the deck at a time when Clevenger was facing the other way and drove a 'devil's fork' deep into Clevenger's back." 325 F.2d at 398. Unlike the present case, there was no evidence of prior provocation by the libellant. Also, it is evident that the Court in *Clevenger* was influenced by the fact that the attacker was the libellant's superior and was in a position of responsibility on the ship.

Clearly, the holding of *Clevenger* is not dispositive of the present case. We feel that the district court correctly decided the entire matter and we therefore

Affirm.