George LAMBERT, Plaintiff-Appellee
and Third-Party Plaintiff,

v.

MORANIA OIL TANKER CORP.,
Defendant-Appellee and
Third-Party Plaintiff,

v.

Lonnie James PFAUDLER,
Third-Party Defendant.

No. 504, Docket 81–7524.

United States Court of Appeals,
Second Circuit.

Argued Dec. 7, 1981.

Decided April 21, 1982.

Edward Katz, New York City (Phillips & Cappiello, P. C., New York City, on the brief), for plaintiff-appellee and third-party plaintiff.

James W. Lynch, New York City (Burlingham, Underwood & Lord, New York City, on the brief), for defendant-appellee and third-party plaintiff.

Before LUMBARD, WATERMAN and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a directed verdict and judgment of the United States District Court for the Southern District of New York, Pierce, J., dismissing George Lambert's action against his employer, Morania Oil Tanker Corp., for personal injuries resulting from the alleged unseaworthiness of Morania's ship and Morania's alleged violation of the Jones Act, 46 U.S.C. § 688. We affirm.

In 1979, Lambert was the captain of Morania's barge T–30, a non-self-propelled vessel which carried a cargo of fuel oil and was manned by a two-person crew, a captain and a mate. In September, 1979, Lonnie Pfaudler was appointed mate. Lambert and Pfaudler worked together for a week without incident, sharing the same bunkroom and galley. Lambert testified that, prior to September 23, he had no reason to complain about Pfaudler's behavior.

Pfaudler had only recently been employed by Morania. He was hired through the local union in August 1979, and assigned to work aboard another barge, the Morania 130. After only a week, it was necessary to reassign Pfaudler to make room for seamen with more seniority. The captain of the Morania 130 had been satisfied with Pfaudler's performance and had expressed a desire to keep Pfaudler a member of his crew. However, because of Pfaudler's lack of seniority, this could not be done.

Before hiring Pfaudler, Morania checked his seagoing employment record with the Marine Bureau Index and learned that he had a valid tankerman's certificate and a clean employment record, never having been discharged for cause. Morania did not check to determine if Pfaudler had a criminal record. Pfaudler did, in fact, have a relatively recent conviction on his record for unauthorized use of a motor vehicle.

On September 22, 1979, the T–30, laden with a cargo of fuel oil, was towed to the Garaghan Oil Terminal in Kingston, New York. Discharge operations commenced around 6:00 p. m. Lambert stood the watch from 6:00 p. m. to midnight. Pfaudler went ashore where he had "a couple of beers". He returned to the T–30 about 11:30 p. m. and took over the watch from Lambert who turned in for the night.

Lambert's version of what followed is that he was awakened around 2:00 a. m. by the clanking of a pump. When he turned out to see if there was a problem, he discovered Pfaudler asleep on a couch in the galley. He woke Pfaudler, who immediately

ran out on deck; Lambert dressed and followed. He discovered that Pfaudler had mishandled the discharge valves and, as a result, oil was not discharging properly. Lambert accused Pfaudler of not knowing what he was doing and ordered him below.

Pfaudler, who at 5'8" and 145 pounds was both shorter and lighter than the 6'3", 275 pound Lambert, took offense and assumed a "Kung-Fu" position. Lambert ignored him, and Pfaudler leaped feet first striking Lambert on the right knee, causing him to fall to the deck. Pfaudler then grabbed Lambert around the neck ripping off his shirt collar. Lambert shook off his assailant while struggling to his feet. Retreating, Pfaudler threw his flashlight at Lambert, narrowly missing him. Pfaudler went below deck where he was found asleep in his bunk about an hour later by police officers summoned to the scene by Lambert. On October 17, 1979, Pfaudler pleaded guilty to harassment in state court and received a 15-day suspended sentence.

According to Pfaudler, there was no fight. He testified that the discharge operation was proceeding smoothly when Lambert appeared on deck claiming something was wrong. They argued and cursed, but neither struck a blow.

■ In deciding Morania's motion for a directed verdict, the district court was required to view the evidence most favorably to the plaintiff, giving him the benefit of all reasonable inferences. *Bigelow v. Agway, Inc.*, 506 F.2d 551, 554 (2d Cir. 1974). Nonetheless, the district court did not err in directing a verdict in favor of Morania.

Before the jury could have made a finding of unseaworthiness, plaintiff had to establish that Pfaudler was not equal in disposition and seamanship to the ordinary men in his calling but had instead a savage and vicious nature, a vicious, pugnacious, or dangerous disposition. *Boudoin v. Lykes Brothers Steamship Co.*, 348 U.S. 336, 340, 75 S.Ct. 382, 385, 99 L.Ed. 354 (1955); *Walters v. Moore-McCormack Lines, Inc.*, 309

F.2d 191, 192–94 (2d Cir. 1962); *Keen v. Overseas Tankship Corp.*, 194 F.2d 515, 518 (2d Cir.), *cert. denied*, 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363 (1952); *Kable v. United States*, 169 F.2d 90, 92 (2d Cir. 1948). Because the record is totally devoid of such proof, a verdict in defendant's favor was properly directed on this issue. *Walters v. Moore-McCormack Lines, Inc.*, supra, 309 F.2d at 192–94; *Stankiewicz v. United Fruit Steamship Corp.*, 229 F.2d 580, 581 (2d Cir. 1956); *Jones v. Lykes Bros. Steamship Co.*, 204 F.2d 815 (2d Cir.), *cert. denied*, 346 U.S. 857, 74 S.Ct. 72, 98 L.Ed. 370 (1953).

■ The record is also barren of proof that Morania knew or should have known that Pfaudler had a propensity for violence and nonetheless negligently hired him or retained him in its employ. *See Guzzi v. Seas Shipping Co.*, 270 F.2d 714 (2d Cir. 1959). Like the district court, we are not prepared to accept plaintiff's argument that the expansive definition of negligence which has been developed in Jones Act cases made Morania liable under the doctrine of *respondeat superior* for the assault upon plaintiff by his co-employee.

Following the enactment of the Jones Act, it was not immediately apparent that the Act's abolishment of the fellow-servant rule applied to intentional torts such as assault. When the seminal case of *Jamison v. Encarnacion*, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082 (1930) was before New York State's Appellate Division Second Department, that court, 224 A.D. 260, 230 N.Y.S. 16 (1928), referred, as does the Jones Act, to the Federal Employers' Liability Act[1] and held that negligence, not assault, is the basis of liability under both Acts. In reversing the Appellate Division, the New York Court of Appeals, 251 N.Y. 218, 167 N.E. 422 (1929), held that the word "negligence" should be broadly interpreted to include "misconduct." The court distinguished *Davis v. Green*, 260 U.S. 349, 43 S.Ct. 123, 67 L.Ed. 299 (1922) on the ground

1. "The Jones Act makes applicable to these suits the standard of liability of the Federal Employers' Liability Act, 35 Stat. 65, as amended, 53 Stat. 1404, 45 U.S.C. § 51." *Johnson v. United States*, 333 U.S. 46, 49, 68 S.Ct. 391, 393, 92 L.Ed. 468 (1948).

that the injuries to Encarnacion were inflicted by his foreman in directing the performance of his work and were intended for the interest of the master. *Id.* 251 N.Y. at 224, 167 N.E. 422. The Supreme Court affirmed, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082, using similar reasoning. Justice Butler, writing for the Court, said:

While the assault of which plaintiff complains was in excess of the authority conferred by the employer upon the foreman, it was committed in the course of the discharge of his duties and in furtherance of the work of the employer's business. (*Id.* at 641, 50 S.Ct. at 442).

In *Alpha Steamship Corp. v. Cain*, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086 (1930), decided concurrently with *Jamison*, Justice Butler wrote:

The complaint charged and the evidence was sufficient to warrant a finding that Jackson was authorized by defendants to direct plaintiff about his work and that, for the purpose of reprimanding him for tardiness and compelling him to work, Jackson struck plaintiff with a wrench and seriously injured him. (*Id.* at 642–43, 50 S.Ct. at 443).

Following the lead of these cases, we have held consistently that there is no Jones Act liability for assault by a fellow-servant unless the assault was made in the course of and in furtherance of the master's business. *See, e.g., Nelson v. American-West African Line, Inc.*, 86 F.2d 730 (2d Cir. 1936), *cert. denied*, 300 U.S. 665, 57 S.Ct. 509, 81 L.Ed. 873 (1937); *Brailas v. Shepard S. S. Co.*, 152 F.2d 849 (2d Cir. 1945), *cert. denied*, 327 U.S. 807, 66 S.Ct. 970, 90 L.Ed. 1032 (1946); *Kable v. United States, supra*, 169 F.2d at 92 (2d Cir. 1948); *Walters v. Moore-McCormack Lines, supra*, 309 F.2d at 194–95.

In *Walters v. Moore-McCormack Lines, supra*, Judge Kaufman, citing *Jamison v.*

*Encarnacion, supra*, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082 and *Alpha Steamship Corp. v. Cain, supra*, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086, said:

The Supreme Court has held that a willful attack by a seaman upon an inferior in order to further the interest of the employer is a species of "negligence" for which the Jones Act makes the employer liable. . . . The test to be employed is whether the attack was with the intention of furthering the personal interests of the assailant or the interests of the employer. (*Id.* at 195).

■ Our decision in *Ira S. Bushey & Sons, Inc. v. United States*, 398 F.2d 167 (2nd Cir. 1968) does not compel a contrary holding. *Bushey* was not a Jones Act case. In *Bushey*, a drunken seaman either negligently or intentionally opened valves, causing a floating dry dock and his vessel to partially sink. Judge Friendly's opinion made no reference to either *Jamison v. Encarnacion, supra, Alpha Steamship Corp. v. Cain, supra*, or *Walters v. Moore-McCormack Lines, supra*. We conclude that those cases constitute binding precedent in actions under the Jones Act, and we interpret them to hold that there can be no recovery for assault by a fellow-servant unless the assault was committed in the discharge of the assailant's duties and in furtherance of the work of the employer's business. *See Slaughter v. Atlantic Coast Line Railroad Co.*, 302 F.2d 912, 916 (D.C.Cir.) (Justice Reed sitting by designation), *cert. denied*, 371 U.S. 827, 83 S.Ct. 48, 9 L.Ed.2d 65 (1962).

■ Because the assault in the instant case "was not committed for the benefit of the defendant", *Walters v. Moore-McCormack Lines, supra*, 309 F.2d at 195, verdict was properly directed for the defendant.[2]

---

**2.** For similar holdings under the Federal Employers' Liability Act, see *Sowards v. Chesapeake and Ohio Railway Co.*, 580 F.2d 713, 715 (4th Cir. 1978); *Slaughter v. Atlantic Coast Line Railroad Co., supra*, 302 F.2d at 916; *Copeland v. St. Louis-San Francisco Railway Co.*, 291 F.2d 119, 121 (10th Cir. 1961); *Euresti v. Washington Terminal Co.*, 280 F.2d 629, 630 (D.C.Cir.1960); *Hoyt v. Thompson*, 174 F.2d 284, 285 (7th Cir. 1949); *Sheaf v. Minneapolis, St. Paul & S.S.M.R. Co.*, 162 F.2d 110, 113 (8th Cir. 1947); *Zoccano v. Long Island Rail Road Co.*, 298 N.Y. 553, 81 N.E.2d 96 (1948); *Lore v. Baltimore and Ohio Railroad Co.*, 8 A.D.2d 944, 190 N.Y.S.2d 506 (1959).

We find no merit in appellant's attack on the district court's evidentiary rulings, which were made in the exercise of that court's broad discretion. *See Miller v. New York Produce Exchange*, 550 F.2d 762, 769 (2d Cir.), *cert. denied*, 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977).

The judgment appealed from is affirmed.