Joseph Robert STOOT

v.

D & D CATERING SERVICE, INC.

Civ. A. No. 83–0887.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Sept. 30, 1985.

Anthony D. Moroux, Domengeaux & Wright, Lafayette, La., for plaintiff.

Norman P. Foret, McBride, Foret, Rozas & Leonard, Lafayette, La., Scott E. Delacroix and Lawrence E. Abbott, Hebert & Abbott, New Orleans, La., for defendant.

## MEMORANDUM OPINION

VERON, District Judge.

In this suit, Joseph Robert Stoot seeks recovery from D & D Catering Service, Inc. under the General Maritime Law. Fluor Drilling Services, Inc. and its compensation insurer, Hartford Accident & Indemnity Company, have intervened for reimbursement for compensation and medical benefits paid to and on behalf of plaintiff. The matter came on before this Court, without a jury, on December 12, 1984.

## FINDINGS OF FACT

On April 18, 1982, the plaintiff, Joseph Robert Stoot, was employed as a derrickhand aboard the vessel "Mr. Dave," a jackup drilling rig located approximately 12 miles offshore from Corpus Christi, Texas. The Mr. Dave was owned and operated by the intervenor, Fluor Drilling Services. Also employed aboard the Mr. Dave was

Eloise Porter, a cook who was in control of the galley and had served the vessel by and through her galley services since November 3, 1981. Both plaintiff and Porter were crewmembers of the Mr. Dave. While Porter served the vessel over the course of several months prior to April, 1982, she was generally employed by D & D Catering Services, Inc., a labor service contractor and the sole defendant herein.

According to the testimony of Porter, the only other employees of D & D Catering aboard the rig were a galleyman, a bedroom man, and a night cook, along with a steward's helper. Porter had no supervisor or superior employee of defendant on board the vessel with her to exercise any degree of direct control over her day-to-day activities.

The plaintiff and Porter had been in contact since Porter was first assigned aboard the rig in November of 1981 and apparently enjoyed a casual and uneventful relationship until shortly before April 18, 1982. Problems arose between the two when the plaintiff began to work an earlier shift than usual, causing him to request meals from the galley at irregular hours. Porter apparently objected to feeding plaintiff at irregular hours and plaintiff reported this difficulty to Mr. Jaubert, his toolpusher. As a result, the toolpusher thereafter spoke directly to Porter about the situation, causing her to become upset.

On April 18, 1982, Porter and plaintiff had an altercation in the galley. When plaintiff entered the galley that morning just before 10:30 A.M., Porter told the plaintiff that he was "nothing but a troublemaker" because he had complained to his toolpusher, Jaubert about her not wanting to feed plaintiff at irregular hours. Without giving plaintiff an opportunity to deliver a retort, Porter marched back into the kitchen. Plaintiff then went to the ice machine in the dining area, turned and told Porter, "Kiss my ass," whereupon Porter came out of the kitchen into the dining area wielding a carving or butcher knife and replied that, "Nobody tells me to kiss their ass." In the ensuing encounter, Porter

swung the knife at the plaintiff, severing the third and fourth digits, and lacerating the fifth digit of the plaintiff's right hand.

The plaintiff was flown by helicopter to the Memorial Medical Center in Corpus Christi, Texas, where the distal joint of his right ring finger was amputated and lacerations of his third and fifth digits were also treated. Plaintiff's third digit was partially amputated in January, 1983 and surgery was subsequently performed on his right hand on four additional occasions. The medical testimony shows that the plaintiff has been left with a forty-four percent disability of his right hand as a result of the knife slash.

## CONCLUSIONS OF LAW

I. This action is brought pursuant to the General Maritime Law of the United States and this Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. § 1333.

II. The plaintiff's cause of action fails to state a claim upon which relief can be granted under the General Maritime Law because recovery under the facts of this case may be had only against the vessel owner or operator.

■ A. The plaintiff's complaint seeks to hold the defendant vicariously liable for the assault of its general employee, Eloise Porter, upon plaintiff. While assigned by her general employer, defendant D & D Catering, aboard the Mr. Dave, Porter was a crewmember serving as galley cook in the furtherance of the vessel's mission. As a crewmember, any negligent actions on the part of Porter are traditionally charged to the owner or operator of the vessel for which Porter served.[1] In this case, however, plaintiff has already received $23,821.84 and has had medical expenses in the amount of $19,125.46 paid by his employer, Fluor Drilling Services, Inc. and its insurer, Hartford Accident & Indemnity Company, intervenors herein. As plaintiff's employer, Fluor, is both the owner and operator of the drilling vessel, Mr. Dave, it is the entity against which plaintiff has the traditional maritime remedies of vessel unseaworthiness and/or Jones Act negligence.[2] Having already been compensated by Fluor, however, plaintiff seeks to recover further damages from D & D Catering, which apparently assigned Porter aboard the Mr. Dave pursuant to an agreement[3] with Fluor.

The novel question thus presented by this case is *not* whether Porter acted or intended to act on the vessel's behalf by assaulting plaintiff, but rather whether Porter acted within the course and scope of her employment with defendant, D & D Catering, by assaulting the plaintiff. After the parties submitted post-trial memoranda on the standard to be applied in determining whether the actions of Porter were within the course and scope of her employment, it became abundantly clear that no such standard exists under the General Maritime Law because the cause of action asserted by the plaintiff has never been recognized under the General Maritime Law.

This Court has found only one case where the remedy for an injury sustained from an assault upon a seaman by a fellow crewmember was sought under the General Maritime Law against a party other than the vessel owner or operator. In *Harts-*

1. See the discussion at II.B., *infra,* regarding the claim of unseaworthiness as the traditional remedy where a seaman has been assaulted by a fellow crewmember.

2. These remedies would be premised upon the fact that Porter was a crewmember of Fluor's vessel and was Fluor's borrowed employee. The law is well-settled that a seaman oftentimes may have more than one employer, i.e., in those instances where she acts as a "borrowed servant." *Spinks v. Chevron Oil Co.,* 507 F.2d 216, 224–26 (5th Cir.1975). See discussion, *infra* at

note 6 and accompanying text. Apparently, no cause of action for the negligence of Porter as Fluor's borrowed employee, or for the unseaworthiness of the Mr. Dave was ever asserted by plaintiff against Fluor.

3. No evidence whatsoever was presented to this Court as to the existence of or terms of any specific written or oral agreement between defendant D & D Catering and Fluor Drilling Services.

*field v. Seafarers International Union,* 427 F.Supp. 264 (S.D.Ala.1977), the personal representative of a fatally assaulted seaman brought suit against the labor union that had allegedly undertaken the duty of supplying a crew to the vessel S.S. "Eagle Warrior," alleging that it negligently performed that duty in causing an individual to be a crewmember when it knew or should have known that that individual was unstable and dangerous to his fellow crewmembers, and that said negligence proximately caused the death of plaintiff's decedent. In noting that a labor organization is not in any position to supervise a crewmember while at sea, the Court recognized that the cause of action asserted by the plaintiff had no basis under the General Maritime Law.

> A seaman who is assaulted may, under proper circumstances, recover damages for breach of the warranty of seaworthiness. *Boudoin v. Lykes Bros. Steamship Co.,* 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955). However, recovery in such a case may be had only against the vessel owner or operator. *The history of litigation arising out of an assault by a fellow crewmember, whether the theory of liability has been unseaworthiness, negligence or respondeat superior, has dealt with the liability of SHIPOWNER to the injured seaman. Hartsfield, supra* at 268, *citing* Annotation, 99 L.Ed. 359 (emphasis added).

Thus, it is clear that the General Maritime Law has never recognized a cause of action against any party, apart from the vessel owner or operator, seeking damages resulting from an assault perpetrated by a fellow crewmember. *Id.; but c.f., Baggett v. Richardson,* 342 F.Supp. 1024 (E.D.La. 1972) (wherein a cause of action was recognized under the General Maritime Law for an assault by persons who were *not crew-*members of the vessel perpetrated upon the vessel's captain).[4]

■ B. The plaintiff nevertheless contends that because the admiralty law uses principles of the common law to fix its liability, *Daigle v. Point Landing, Inc.,* 616 F.2d 825 (5th Cir.1980), this Court should apply common law principles of respondeat superior to find the defendant vicariously liable for the assault perpetrated by Porter. The General Maritime Law incorporates the general law of torts, however, only when doing so would not be inconsistent with the law of admiralty. *Harrison v. Flota Mercante Grand Colombia S.A.,*[5] 577 F.2d 968, 977 (5th Cir.1978); *Spinks v. Chevron Oil Company,* 507 F.2d 216, 222 n. 8 (5th Cir.1975). It is a fundamental principle of the maritime law of the United States that it is to be uniform throughout the country. All of those cases brought under the General Maritime Law in which recovery has been awarded to a seaman for injuries sustained as a result of an assault by a fellow crewmember have been had *only* against the vessel owner or operator, usually involving a finding of unseaworthiness of the vessel as a result of the unfit nature of the crewmember perpetrating the assault. *See, e.g., Clevenger v. Starfish & Oyster Co.,* 325 F.2d 397 (5th Cir.1963). In *Clevenger,* the Fifth Circuit Court of Appeals, noting that the warranty of seaworthiness extending from the shipowner has its roots deep in maritime history, held that a savage assault with a meat cleaver or similarly dangerous weapon by one crewmember upon another does, as a matter of law, constitute a breach of the warranty of seaworthiness. *Id.* at 402. The Court further noted that "when the action for unseaworthiness is available, its notion of liability swallows up any notion of maritime negligence, no matter how leniently conceived." *Id.* The shipowner's duty to provide a seaworthy vessel, including a crew

---

4. Of course, the vessel owner is not liable for the malicious acts of a stranger, i.e., one not a member of the vessel's crew. *Campbell v. Penn. R.R. Co.,* 85 Fed. 462 (2d Cir.1898), *cited in* 2 BENEDICT ON ADMIRALTY § 11 n. 7.

5. There is no inconsistency between admiralty law and the common law in product liability situations, such as recognizing the duty of the seller of a product to warn of those dangers which are reasonably forseeable and of which the plaintiff cannot reasonably be expected to be aware. *See, e.g., Harrison, supra* at 977.

equal in disposition and seamanship to the ordinary person in the calling, is absolute and nondelegable. *Id.* at 400; *The Rolph*, 299 Fed. 52, 55 (9th Cir.1924).

Because it is the *shipowner's* duty to control his crew that is so deeply rooted in federal maritime law, it would upset the uniform and harmonious application of that law to recognize a cause of action against a general labor service contractor in the circumstances of this case. The common law doctrine of respondeat superior is based upon the long-established policy that persons are bound to conduct their affairs so as to not cause injury to another, and if a person undertakes to manage his affairs through his employees, he remains bound to manage them so that third persons are not injured while his employees are engaged upon his business and within the scope of their authority. *See, e.g.,* 35 Am. Jur. § 543 at p. 974. As explained long ago by Lord Chief Justice Best, "The maxim of respondeat superior is bottomed on this principle: that he who expects to derive an advantage from an act which is done by another for him must answer for any injury which a third person may sustain from it." *Hall v. Smith*, 2 Bing. 156, 130 Eng. reprint 265, *cited in* 35 Am.Jur. § 543 at p. 975. In accordance with the doctrine, it has been recognized that some power to control the acts of the wrong-doer must have been vested in the employer at the time of the injury. *Id.* It is this concept of "control" which dictates that a seaman's right of recovery for an injury caused by an assault perpetrated by a fellow crewmember should be had only against the shipowner in the circumstances of this case.

In the case at bar, Porter was a crewmember of the Mr. Dave, having served aboard the vessel from November 4, 1981 up until the date of the assault on April 18, 1982. According to the deposition testimony of Porter, she had no supervisor or superior employee of defendant on board the vessel with her to exercise any degree of direct control over her day-to-day activities.[6] Moreover, she was utilizing facilities of the vessel galley and was furthering the mission of the vessel by her employment. Additionally, it has been well observed that "[those] engaged in the operation of a vessel on the high seas work under conditions of close confinement which tend to breed irritations and sharp tempers such as are not usually encountered in employment ashore." M. Norris, The Law of Seaman § 30:35, at p. 490 (4th ed. 1985). As noted by Judge Learned Hand in *Jones v. Lykes Bros. S.S. Co.*, 204 F.2d 815 (2d Cir.1953), "Sailors lead a rough life and are more apt to use their fists than office employees." Under these circumstances, it would be entirely inappropriate to impose a duty of control, pursuant to the policies underlying the doctrine of respondeat superior, upon a general labor service contractor for an assault perpetrated by a person whom it provided for assignment aboard a vessel several months earlier. No case authority to date has imposed such a duty of control upon anyone other than the vessel owner or operator, and this Court does not find it appropriate to do so under the facts of the case at bar.

■ III. Even if this Court were to recognize a cause of action under the doctrine of respondeat superior by the injured sea-

---

6. The importance of "control" over the employee-crewmember has been recognized in cases arising under the Jones Act in determining who is the Jones Act employer of a "borrowed servant." In *Roberts v. Williams-McWilliams Co.*, 648 F.2d 255 (5th Cir.1981), plaintiff was employed by Gibson, a labor service company, and was sent to the Williams-McWilliams barge to do welding work. While assigned aboard the barge, plaintiff was injured. In holding Williams-McWilliams to be liable for plaintiff's injury under the Jones Act, the Court noted: "During his work, Roberts was under the complete control of Williams as no Gibson foreman was assigned to the shift on which he worked." *Id.* at 262.

For other factors to be evaluated in determining whether an employee is to be considered a borrowed employee of another, see *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312–13 (5th Cir.1969). It is important to note, however, that "no fixed test is used to determine the relationship." *Champagne v. Penrod Drilling Co.*, 341 F.Supp. 1282, 1284–85 (W.D.La.1971), *aff'd* 459 F.2d 1042 (5th Cir.1972).

man against the defendant labor service contractor, the action of Porter in assaulting plaintiff with the large kitchen knife was not within the course and scope of her employment. Although the origin of the dispute between plaintiff and Porter concerned the plaintiff's requests to be fed at irregular hours, the apparent motivation of Porter in picking up the knife and waving it at plaintiff was because, as plaintiff relates the words of Porter as she approached him with the knife, "Nobody tells me to kiss their ass." As related in the deposition testimony of Porter:

> Q. And it is your testimony that you did not grab the knife until he told you to kiss his ass?
>
> A. Definitely not.

As such, the Court holds that Porter's knife assault upon plaintiff was motivated for purely personal reasons in order to satisfy her own spite after having been told to kiss plaintiff's ass.

In the case of *Palmer v. Apex Marine Corp.*, 510 F.Supp. 72 (W.D.Wash.1981), the plaintiff, Palmer, sued the *vessel operator* under the General Maritime Law for injuries sustained to his finger as a result of a fight with a fellow crewmember by the name of Brown. Apparently there had been a longstanding dispute between Palmer and his fellow crewmember Brown as to the tardiness of Palmer in relieving Brown from his watch. The Court found that "[Palmer's] acts of relieving Brown late was the main cause of the friction ... which eventually ignited into a fight...." *Id.* at 73. Nevertheless the Court held:

> Findings of "course and scope" are based on the attacker's intent, warped or otherwise, to act for the ship.... There is no allegation, and no reasonable argument could be made, that Brown acted or intended to act on the ship's behalf by fighting with Palmer. Therefore, this theory must fail as a matter of law. *Id.* at 74.

The Court finds the *Palmer* case to be persuasive. Also, those cases seeking to impose vicarious liability under the Jones Act apply a test which is similar to that employed in *Palmer*, which was brought under the General Maritime Law. As stated by the Second Circuit Court of Appeals in the oft-cited case of *Walters v. Moore-McCormack Lines, Inc.*, 309 F.2d 191 (2d Cir.1962):

> The test to be employed is whether *the attack* was with the intention of furthering the personal interests of the assailant or the interests of the employer. *Id.* at 195. *See also Lambert v. Morania Oil Tanker Corp.*, 677 F.2d 245 (2d Cir.1982).

Because the assault upon plaintiff was simply a wanton act, done to satisfy the employee's temper and spite, the employer cannot be held vicariously liable.

█ Plaintiff nevertheless contends that the Court should apply the general state law test for vicarious liability in such situations as that embodied in the Louisiana Supreme Court case of *LeBrane v. Lewis*, 292 So.2d 216 (La.1974). In *LeBrane*, the supervisor stabbed one of his employees after the employee had been fired and while the supervisor was escorting the fired employee off of the employment premises. The Court held that the stabbing

> ... occurred while the employee was at least partially actuated by his purpose of acting for his employer in the discharge of the recalcitrant co-employee [citation omitted], and it was reasonably consequent upon or incident to [the supervisor's] performance of his employment function of hiring and firing sub-employees [citation omitted]. *Id.* at 219.

Even if this Court were to find some basis for the application of state law, no reasonable argument can be made that Porter was attempting to get plaintiff to eat in the galley only at scheduled meal-times when she incidentally lacerated his fingers with the knife.

Upon its foregoing consideration of the facts of this case and the established General Maritime Law, the Court accordingly grants JUDGMENT FOR DEFENDANT.