## NELSON v. AMERICAN–WEST AFRICAN LINE, Inc.*
### No. 125.

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1936.

*Writ of certiorari denied 57 S. Ct. 509, 81 L. Ed. ——.

Haight, Griffin, Deming & Gardner, of New York City (Edgar R. Kraetzer, of New York City, of counsel), for appellant.

Hunt, Hill & Betts, of New York City (George Whitefield Betts, Jr., and William Logan, Jr., both of New York City, of counsel), for appellee. .

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment dismissing the complaint at the close of the plaintiff's evidence in an action to recover for personal injuries under section 33 of the Merchant Marine Act of 1920, U.S. Code, title 46, § 688 (46 U.S.C.A. § 688). The plaintiff was an able seaman upon the defendant's steamer, "West Irmo," on a voyage from New York to West Africa; and while the ship was lying in a port on the Congo River at between eleven-thirty and twelve o'clock at night, the ship's boatswain entered the crew's quarters and struck him a blow across the face with a wooden bench while he lay in his bunk. The theory of the action was that the boatswain was acting within the scope of his authority, and that the statute created a cause of action against the owner under the doctrine of Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082, and Alpha S. S. Corp'n v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L. Ed. 1086. In the light of those decisions no issue remains except whether the boatswain was so acting, as to which the evidence is as follows. The "West Irmo" had but one boatswain; he had been off duty ashore, where he got roaring drunk, and came aboard at night with much noise, disorder and violence. He first chased the carpenter into the lavatory, and tried to break through the door to get at him; he then went back into the mess room, where he furiously raged about for a while, until the notion seized him to go into the crew's quarters, where the plaintiff was trying to sleep. It was still a half hour before midnight when the plaintiff was to go on watch, but the boatswain apparently had a mad idea that the plaintiff should get up and go on deck at once, for as he struck him, he cried out to him, "Get up, you big son of a bitch, and turn to." Having roused him by the first blow, he engaged in a fight with him in which the plaintiff was further injured. The boatswain kept no watches, but worked as occasion required; he had authority to call out all hands when he thought best, and did so, for example, on leaving port, or in stress of weather. Like other boatswains, he was foreman, so to say, of crew. The judge thought that at the time of the assault he was not acting for the ship and dismissed the complaint. The plaintiff appeals.

When the case of Alpha S. S. Corp. v. Cain, supra, was before us, Cain v. Alpha S. S. Co., 35 F.(2d) 717, we discussed the question now at bar. The circumstances were indeed different because the superior officer was on duty at the time, but the plaintiff did not, and could not, assert that the assault in fact was in aid of discipline on board the ship, or that it was not in part actuated by motives which had nothing to do with the owner's interest. A principal is not chargeable with willful acts, intended by the agent only to further his own interest, not done for the principal at all. Davis v. Green, 260 U.S. 349, 43 S.Ct. 123, 67 L.Ed. 299; Bonsalem v. Byron S. S. Co., 50 F.(2d) 114 (C.C.A.2); Sibley v. Barber S. S. Lines (D.C.) 57 F.(2d) 318; Restatement of Agency, § 235. But motives may be mixed; men may vent their spleen upon others and yet mean to further their master's business; that meaning, that intention is the test. Pennsylvania Mining Co. v. Jarnigan, 222 F. 889 (C.C.A.8); Whitted v. Southwestern T. & T. Co., 231 F. 926 (C.C.A.8); Schultz v. Brown, 256 F. 187, 191 (C.C.A.9); Thompson-

Starrett Co. v. Heinold, 60 F.(2d) 360 (C.C.A.3); Mott v. Consumers' Ice Co., 73 N.Y. 543, 551; Magar v. Hammond, 183 N.Y. 387, 390, 391, 76 N.E. 474, L. R.A.(N.S.) 1038; Restatement of Agency, § 236, § 245, comment (d). In the case at bar the boatswain may indeed have had no other purpose than to do violence to anyone who fell in his way; unless there was some evidence that he supposed himself engaged upon the ship's business, the ship was not liable. In support of the conclusion that he did not so suppose, the ship argues that there was no occasion for him to intervene at all; that the plaintiff had nothing to do till he went on watch which was half an hour off; and that there was every reason to suppose that he would do his duty when his turn came. In truth it was at best an act of wanton tyranny to get him out of his bunk at that time, to say nothing of the violence used in effecting it. But the boatswain was blind drunk, and through his clouded mind all sorts of vague ideas may have been passing; the fact that he had made himself incompetent to further the ship's business was immaterial, the owner had selected him to command, whatever his defects and his addictions. If he really meant to rouse the plaintiff and send him upon duty, if he really meant to act as boatswain and for the ship, however imbecile his conduct it was his master's. We are disposed to think that when he told him not only to get up, but to "turn to," that order was some evidence that he meant to act for the ship, and not alone to satisfy his vindictive passions. Normally when an officer, drunk or sober, tells a man to go to his duty, it is not for the mere show of authority, but at least in part because he supposes that some work should be done. The best that an owner can ask in such a case is that if the jury believes that the order, though in form in the ship's behalf, was given only in vainglory, he shall not be charged. The result does not depend upon the scope of the boatswain's authority in the ordinary sense; we have not to say whether an act, for example forbidden by the master, should nevertheless be imputed to him. There is here no doubt that if the boatswain intended to act for the ship at all, his command was within his powers; he had been authorized to order any seaman to any work at any time; the order was within not only his apparent authority—

whatever that phrase may mean—but within his express authority. The inquiry into the tangled mazes of a drunken boatswain's mind may be beyond the powers of a jury, but it is the fact upon which the case turns, and there was enough to justify them in finding that he supposed that he was acting as boatswain and not wholly as a petty tyrant. It does not indeed follow that the subsequent affray was in the same class as the original blow, but that is a matter to be dealt with when the judge charges the jury.

Judgment reversed.