## LYKES BROS. S. S. CO., Inc., v. GRUBAUGH.

### No. 10128.

Circuit Court of Appeals, Fifth Circuit.

May 25, 1942.

Order Modified on Rehearing Aug. 5, 1942.

See —— F.2d ——.

---

388

John R. Brown and Robert Eikel, Jr., both of Houston, Tex., for appellant.

Arthur J. Mandell, of Houston, Tex., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Brought by the steward of Lykes Bros. Steamship "Hybert", the suit was under the Jones Act, 46 U.S.C.A. § 688, for damages for injuries inflicted on him by the negligence of the chief engineer and an assistant engineer. The claim was that while the vessel was moored to the dock in Brooklyn, the plaintiff was unlawfully assaulted by the chief engineer and the first assistant engineer, acting in the scope of their authority as officers of the ship over plaintiff, that he sustained damages as the result thereof, and that he is entitled to recover his actual damages and maintenance and cure. This was the case in substance as pleaded: that he was unlawfully assaulted and that at all times while unlawfully and flagrantly assaulting

him these two were telling him that they were the real authority on the vessel and that they were disciplining plaintiff without advising him of the cause for such unusual and unlawful punishment. There was a further allegation; that he was notified that the chief engineer wished to see him; that he went to the chief engineer's door and the chief, without addressing him, opened the door and said, "I will show you who has authority aboard this vessel", and then began beating plaintiff over the head and face; that when the chief engineer approached plaintiff he realized that the chief engineer was grossly intoxicated, that he tried to escape but the assistant engineer held plaintiff while the chief struck him. There was a motion to dismiss because the complaint failed to state a cause of action, defenses that plaintiff had been making libelous and defamatory statements concerning the chief engineer; that the quarrel or dispute had no relation to the business of defendant but was over these slanderous statements; that the participants in the quarrel acted in their individual capacities and not in their official capacities; that the quarrel was outside the line of duty of the offic:· s engaged in it; and that because the fight was not at all an official but a purely personal matter, defendant was without fault. The case came on for trial to a jury, and the defendant moved for a continuance in order to obtain the testimony of its witnesses. The court, allowing defendant to offer statements defendant had taken as though they were depositions of the witnesses, denied the motion. The case then proceeding to trial, it appeared without dispute from the whole of the evidence that the moving cause of the fight was the resentment of the intoxicated chief engineer over the fact that plaintiff had, or the engineer believed he had, been circulating defamatory statements about him. This evidence, in addition to the testimony of defendants' witnesses consisted of a written statement of the occurrence made by the plaintiff in the office of defendant in New York just after the incident had occurred. Notwithstanding this state of the evidence, the court, on the following testimony of the plaintiff set out in the margin,[1] submitted to the jury the issue of

[1] "Q. Now will you tell me who is in complete charge of the vessel? A. The master. Q. Who is immediately after the master in complete charge? A.

There are two men, the chief officer and the chief engineer. Q. If the master is not aboard the ship, who would be in complete charge of the vessel? A.

whether or not the occurrence was a purely personal row or grew out of, and occurred in, the conduct of the business of defendant.

In the course of the trial defendant attempted to offer a statement from defendant's hospital record that plaintiff was fit for duty when discharged. This was rejected. Plaintiff, on the issue of maintenance and cure, over the objection of defendant, proved by one of defendant's officers, that the allowance to officers while ashore away from home was $3.50. The evidence in, defendant moved for a directed verdict and requested several special charges advising the jury that the quarrel would be personal even though plaintiff had not, in fact made any defamatory remarks, if the engineer struck him because he believed he had. The request for a directed verdict was refused and the case submitted to the jury under

---

Whichever one of the other two were there, either the chief engineer or the chief mate. I had never had any quarrel with the chief engineer. I was the head of my department. The engineer was the head of his. I did not consider that I was an officer. I considered that I was a member of the crew and I considered every officer on the ship as my superior officer. I didn't perform any duties in the engine room. My duties related to the feeding of the crew and the keeping of the officer's quarters clean. The chief engineer was a very hard man to please. He was my superior, like all the other officers were. As steward I never had any regular hours. I saw that the officers' quarters were clean and looked after the food. The engineer's authority is confined to the engine room. If he wants anything outside of that done he must transmit the order through the master but if the chief engineer told me to perform a duty of any kind I would have to do it. He is my superior officer. He could charge me with mutiny if I didn't do what he told me to do. I was the head of my department but I had to obey the orders, if he gave me any, of the chief engineer. Q. Well, I thought you testified the only superior you had was the master and were directly responsible to him? A. I am directly responsible to the master in the line of my department. Q. And that is the only thing you have any duties with respect to, isn't it? A. Yes, sir, but if an officer directs me to do anything I have to do it. The master is in charge of my books and papers. He is the only man I am responsible to for my papers, books or supervision of my department, but any man on the ship has authority to tell me to do something; to see that his room is fixed or to tell me any particular thing he wants."

Another witness, Luke J. Meade, testified that the chief engineer has full charge of the ship in the absence of the master and the chief mate. As to the actual occurrence the theory of plaintiff was that the attack on him was in the way of discipline because the chief and the assistant engineer did not approve of the method which the steward had of discharging his duties and on that the plaintiff testified: "Mr. Meade told me the chief engineer was looking for me. I went down and looked for him. I went down the passageway where Meade had said the chief wanted to see me, stopped at his door and as I went to knock on his door he opened it and standing in the doorway he began striking at me and calling me names. I was very much surprised. I didn't know what it was all about and I tried to hold his arm off. Q. What did he say while striking you? A. He began telling me I wasn't a good steward; he didn't want me on the ship any longer; and he was going to run me off and he was the authority on there and he didn't like the way I conducted my department. Q. Did you ask him why he was doing that to you? A. I did. The only explanation he gave me was that he didn't like me, didn't like the way I was conducting my department and my work. I saw he was intoxicated and I wanted to get away from him. I tried to convince him he was wrong and doing something that would get him in a lot of trouble. I got away from him, then he and the assistant started beating me in the pantry room. I told them that anything I had did, I was ready to make amends, if I had did anything. I wanted to know why they were beating me. I had no knowledge of anything I had done to be beat up for, and I tried to convince them that they were making a mistake, but they wouldn't listen to me. I told them they could take it up with the proper channels if they had any argument, and they didn't need to beat me up to punish me. They told me it was good discipline."

This was his testimony on the trial of the case. In the statement he gave, plaintiff put the matter in this way: "I started for his door and met him just outside in the passageway. Upon asking what he wanted with me he struck me in the face with his fist. When he did that I grabbed his hand and tried to find out what the trouble was and he accused me of talking about him."

a general charge in which among other things, the court instructed the jury: (1) "The master is not liable in law for all actions of the servants. Servants or employees frequently do many things upon their own account and for those things the master is not accountable. The master is however accountable for things done by his servant or employee in the course of the discharge of the master's business and within the scope of his employment whether the servant or employee does it rightfully or wrongfully or not. (2) If the servant is not discharging the master's business or not acting within the realm of authority delegated to him by the master but is engaged in performing some business of his own or settling some matter of his own, then the master would not be liable. (3) It is the plaintiff's contention that they assailed him upon the idea that they didn't like the services of the steward, didn't like the way in which he deported himself; didn't think he was fit to be upon the boat and that he should not be, and they were attempting to run him off the boat, and that he was, to some extent, subject to their orders and directions and that they took this mistaken way of supervising him, that is to say, to discipline him by actual physical corporeal punishment. If those things all be true, then the master would be liable for their action." * * * "If you are not convinced from a preponderance of the evidence that they had no right to supervise, direct or control him or that they were either mistakenly or otherwise attempting to supervise, direct and control and on the contrary believe that this matter grew entirely out of personal differences that may have existed between the parties, and had nothing to do with the ship's business, then you will find for the defendant."

■ There was a verdict for plaintiff followed by judgment and a remittitur of part of the recovery, and defendant has appealed. Appellant here complains, of the order denying the continuance, of the orders excluding and admitting evidence, and of the refusal to give its requested charges, but its principal point is that plaintiff's petition did not state and its proof did not establish a cause of action and that its motion to direct a verdict and its later motion for judgment notwithstanding the verdict, ought to have been granted. We think there was no error in the rulings denying the motion for continu-

ance, none in those admitting and excluding evidence, none in the refusal of the special charges. The motion denying the continuance was addressed to the sound discretion of the trial judge and we cannot say, under the circumstances of the case, including its long pendency before the depositions were taken and the permission granted to appellant to use the statements of its witnesses as depositions, that that discretion was abused. The conclusion in the hospital report that plaintiff was fit for work was correctly excluded. The statute making such reports evidence, merely accredits the facts that they contain, it does not purport to make opinions admissible as evidence. The ruling permitting one of appellant's officers to testify as to the amount allowed officers when on shore, was not error. It was not of course determinative of what a proper allowance for maintenance should be but it was evidence bearing on the point, especially in view of plaintiff's evidence, that it actually cost him that sum while in Houston. Upon the complaint as to the charges it is clear that while the court did not charge appellant's theory in the language requested, he did in the general charge, sufficiently present appellant's theory that if the assault was the result of a personal row plaintiff could not recover.

■ Taking the evidence however, most favorably for plaintiff, it did not make out a case and the court erred in refusing to instruct a verdict. Nothing more clearly shows the misconception under which the court was laboring in his determination that the case was one for the jury than the language he used in his charge in stating the plaintiff's contention and declaring that if that contention was made out, the defendant would be liable. "It is the plaintiff's contention here that they assailed him upon the idea that they didn't like the services of the steward; didn't like the way in which he deported himself; didn't think he was fit to be upon the boat and that he should not be, and they were attempting to run him off the boat, and that he was, to some extent, subject to their orders and directions and that they had the power and authority to supervise him and that they took this mistaken way of supervising him, that is to say, to discipline him by actual physical, corporeal punishment. If those things all be true, then the master would be liable for their action."

█ The law governing the responsibility of the master for an injury from a beating administered by one employee to another, as well stated in Medlin Milling Co. v. Boutwell, 104 Tex. 87, 133 S.W. 1042, 34 L.R.A.,N.S., 109, and Davis v. Green, 260 U.S. 349, 43 S.Ct. 123, 67 L.Ed. 299, is that under the doctrine of respondeat superior there is no liability for a wrongful assault committed by one employee on another unless the assault is committed, whether wisely or unwisely, in furtherance of or in an attempt to further the master's business or in other words in connection with some act which an assaulter is authorized to do for the master. In any case where the act is merely a wanton and wilful act done to satisfy the temper or spite of the employee, the master is not liable. In Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082, and Alpha Steamship Corp. v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086, applying to assaults on shipboard, the rule of the Green case, the Supreme Court declares, that the employer may be liable under the Jones Act only when the assault is committed by one having authority over the person assaulted and then only when it is committed in the course of the conduct of the master's business. In each of those cases the assault was by a superior officer upon a subordinate employee whom the assailant had the power and authority to direct, control and discipline. No case has held a steamship company liable for an assault committed by a subordinate employee upon his superior or by the head of one department upon the head or an employee of another department over whom the assailant has no authority of direction or control. None has held the master liable where as here the assault occurred as the result of anger over matters having nothing to do with the exercise, over the assailed, of authority delegated by the master to the assailant in the discharge of duties with which the master had charged him. It is appellant's position that the case fails here both because the engineer had no authority or control over the steward and because if he had, the evidence not only wholly fails to establish that the assault was committed in attempting to carry out the master's business but on the contrary it affirmatively shows that it was a personal quarrel to vent the drunken spleen of the engineer.

█ Nelson v. American-West African Line, 2 Cir., 86 F.2d 730, goes as far as any case has gone, in fact it goes to the verge, in establishing liability for a drunken assault. There the acts complained of were those of a drunken boatswain who had assaulted one on board ship who was under his control and whom he had the authority to rout out for work. The court said that while the abusing and fighting and ordering occurred before the time for the injured seaman to go to work had actually arrived, there was testimony that the beating had occurred while the drunken boatswain was ordering him to go to work, and there was a question for the jury whether the boatswain was really, in his drunken imagining, trying to make him go to work or was merely venting his personal spleen. The construction given that case in Yukes v. Globe S. S. Corp., 6 Cir., 107 F.2d 888,[2] shows that the mere fact of a superior position or the fact that authority was asserted is not the controlling question in these cases. The question is, was the superior attempting to exert that superiority on behalf of the master or was he exerting it in a private brawl, at the time the injury occurred. Tested by this rule, nothing in the evidence supports the theory upon which plaintiff recovered. Assuming as, under the jury's verdict, we must, that the matter occurred exactly as plaintiff testified on the trial that it did, and assuming that what authority the chief engineer had was a matter of fact as to the custom or practice on board that boat, and could be established by the oral evidence of plaintiff and two witnesses rather than by the rules and orders of the employer, the case wholly fails, because according to plaintiff's own testimony the engineer was giving him no orders, was not undertaking to get him to do anything, but was merely undertaking to beat him because he didn't like him as a steward and wanted to run him off the boat. By no possible imagining could the testimony as to the authority of the engineer over the ship, when the master and chief mate were absent, be stretched to extend to an authority to run the steward off the boat. By his own testimony, and it was not con-

---

[2] There, as here, the chief engineer and an assistant were involved. There, as here, during the assault, the assailant repeatedly asserted, "I am an officer of this ship; I will show you what I mean."

tradicted, the steward was the head of his department and was accountable for the discharge of his duties to and only to the master of the ship. The fact that the besottedly drunken engineer said he wanted to punish him and run him off the ship because he didn't like the way he had acted could not furnish any reasonable basis for the finding that the engineer was acting in the scope of his authority and on the master's business. The case then stands upon the undisputed evidence as one of an assault made because of the engineer's personal resentment of the tales he believed the steward was carrying about him. Plaintiff does not deny, indeed he admits, that the engineer was angry with him because of his supposed tale telling. He merely denies that he had told tales and claimed that the engineer wrongly accused him. Plaintiff's effort to show that notwithstanding the real basis for the trouble was a personal grievance, the master is yet liable because in the course of the row the engineer loudly asserted his authority, will not avail him. For nothing in the testimony, "We will show you who is officer here; we don't like the way you do your work here, we are going to run you off the boat", at all supports the verdict that the engineer was in the course of discharging or attempting to discharge any duties he owed the master or exerting or attempting to exert any authority given him by the master over plaintiff, if, in fact and in law, he had any.

Though we believe that no case was made out and that the judgment must be reversed, we are not of the opinion that it ought to be reversed with directions to enter judgment. We think rather that the judgment should be reversed and the cause remanded for trial anew, this time upon depositions and full testimony upon the issues of fact and of law as to the authority, if any, the engineer had over plaintiff, and whether he was, at the time of the fight, undertaking to exercise it in carrying out his master's business.

The judgment is accordingly reversed and the cause remanded for further proceedings in accordance with this opinion.

McCORD, Circuit Judge (dissenting).

I think the evidence was abundantly sufficient to show that the chief engineer was one of the ranking officers of the Steamship "Hybert", and that at the time of the brutal assault upon steward Grubaugh, he was exercising his authority over this unlicensed member of the ship's crew. It is clearly shown that the chief engineer had full supervision and authority over the machinery of the vessel, including that in the steward's department; that the steward made the beds in his quarters; and that in the absence of the master and the chief mate he was in full charge of the ship.

The chief engineer, as he had a right to do, sent for the steward, who, as it was his duty to do, responded to the summons and went to the chief engineer. The chief engineer then began telling Grubaugh that he did not like the way he was conducting his department, and that he was going to run him off the ship. Not content to act alone in the assault upon the steward, the chief engineer enlisted and accepted the aid of his first assistant, who joined in the beating and held the steward, who had tried to get away and who was reluctant to and did not strike back at his superior officer. During the assault Grubaugh even appealed to the fourth assistant mate, junior, to protect him, but this mate said he had no authority over these men.

I think that the evidence in this record permits of two reasonable, though inconsistent, inferences: (1) That the assault upon the steward arose out of a purely personal difference or quarrel between the chief engineer and the steward; and (2) that the chief engineer in the exercise of his authority over the steward sought to discipline him, and in doing so made an unwarranted and unprovoked attack upon this helpless man. The issues were properly submitted to the jury, which, as it had a right to do, chose to draw the second of these permissible inferences, and its verdict on this essential and ultimate fact should not be disturbed by this court, even though it might have drawn the first inference had it been sitting as the jury in the case.

The intoxicated chief engineer was a subordinate officer of the ship who had been chosen by the employer and clothed with authority. The owner had selected him to hold a position of authority and to command, whatever his defects and addictions, and while he was exercising or attempting to exercise his authority his wrongful actions were imputable to his master.

I think that the evidence made a case for the jury; that the trial judge properly

submitted the case; and that the judgment should be affirmed. See Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082; Cain v. Alpha Steamship Corporation, 2 Cir., 35 F.2d 717, affirmed 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086; Nelson v. American-West African Line, 2 Cir., 86 F.2d 730; and Cf. Yukes v. Globe S. S. Co., 6 Cir., 107 F.2d 888, where the only permissible inference from the record was that the fight arose out of a purely personal difficulty.

I respectfully dissent.