**Martin WIRADIHARDJA, Plaintiff,**

v.

**BERMUDA STAR LINE, INC., Defendant.**

No. 89 Civ. 3927 (SWK).

United States District Court, S.D. New York.

Sept. 1, 1992.

Profeta & Eisenstein, New York City by Constance M. Burke, for plaintiff.

Martocci & Burns, New York City by Michael Martocci, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action under the Jones Act, 46 U.S.C.App. § 688,[1] arises from injuries that plaintiff, Martin Wiradihardja ("Wiradihardja"), allegedly sustained as a result of a subordinate crew members' assault while Wiradihardja was aboard the Bermuda Star Line ("BSL") vessel the S.S. QUEEN OF BERMUDA (the "S.S. QUEEN"). Presently before the Court is BSL's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting it summary judgment dismissing the complaint's negligence and unseaworthiness claims. Also before the Court is Wiradihardja's cross-motion, pursuant to Rule 37 of the Federal Rules of Civil Procedure, for an order granting it sanctions, including striking BSL's answer, due to BSL's failure to comply with discovery orders.

### BACKGROUND[2]

During June, 1988, plaintiff Wiradihardja was employed as a food manager aboard the S.S. QUEEN.[3] In Wiradihardja's capacity as the S.S. QUEEN's food manager, his responsibilities included supervision of the vessel's food service, food suppliers and food service crew members. Deposi-

tion of Martin Wiradihardja, dated Oct. 16, 1989 ("Tr."), at 16, 74.

On June 30, 1988, Wiradihardja was in his office adjacent to the vessel's crew mess hall doing paperwork at his desk when a member of the food service staff known to Wiradihardja as Winston Wilson, a vegetable cook, appeared at the office doorway twelve to fifteen feet away. (Tr. at 36–37, 40.) Wilson picked up from the crew mess table in the front of Wiradihardja's office a bottle of tabasco sauce and a bottle of ketchup. (Tr. at 38–39.) Wilson launched the bottle of tabasco at Wiradihardja. (Tr. at 39–42.) Wiradihardja evaded the projectile. (Tr. at 41–42.) Wilson then cast a bottle of ketchup at Wiradihardja, who, in an effort to shield himself, raised his left arm. (Tr. at 40–43.) The bottle of ketchup struck Wiradihardja's left forearm causing a fracture which necessitated surgical repair. (Tr. at 42–43, 77–78.)

This action was brought in the United States District Court for the Eastern District of Louisiana to recover damages for the injuries Wiradihardja sustained aboard the S.S. QUEEN, and was transferred to this court pursuant to 28 U.S.C. § 1404. The complaint alleges a claim under the Jones Act for negligence, as well as a claim alleging that the vicious propensity of an S.S. QUEEN crew member rendered the vessel unseaworthy.

The parties have concluded extensive discovery and filed a joint pre-trial order. BSL nevertheless moves for an order granting it summary judgment dismissing the complaint. BSL contends that, as a matter of law, it may not be held liable in tort (or otherwise) for the injuries Wiradihardja allegedly sustained aboard the S.S. QUEEN. BSL also argues that Wiradi-

---

1. The Jones Act provides in pertinent part:

   Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply....

   46 U.S.C.App. § 688.

2. Unless otherwise indicated, the following uncontroverted facts are taken from the parties' statements of undisputed material facts submitted pursuant to Local Civil Rule 3(g), and the parties' affidavits and the exhibits attached thereto.

3. The S.S. QUEEN was a passenger cruise ship owned and operated by BSL, sailing a regular route between New York, New Orleans and Bermuda. Affidavit of Constance M. Burke, Esq., sworn to July 18, 1991 ("Burke Aff."), at ¶ 2.

hardja has failed to adduce evidence sufficient to support a claim for unseaworthiness and contends that it is entitled to an order dismissing this claim as a matter of law.

Wiradihardja opposes BSL's motion for summary judgment and cross-moves for an order, pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure, striking BSL's answer on account of BSL having misrepresented to the Court its inability to produce personnel files sought by Wiradihardja during discovery.

## I. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[4] The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985);

*Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987); *see also Adickes v. S.H. Kress and Co.*, 398 U.S. at 158–59, 90 S.Ct. at 1608–09. But the court must inquire whether "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and grant summary judgment where the non-movant's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *see Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12–15 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

To determine whether the moving party has met its burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the non-movant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.*, but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment. *See, e.g., Knight v. U.S. Fire Ins. Co.*, 804 F.2d at 11–12.

Once the non-moving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party

---

**4.** The moving party does not have the burden of providing evidence to negate the non-moving party's claims. *Id.* As the Supreme Court recently noted, "whether the moving party accompanies its summary judgment motion with affi-

davits, the motion may, and should, be granted so long as whatever is before the court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

comes forward with additional evidence sufficient to establish his or her burden under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. at 330 & n. 2, 106 S.Ct. at 2556 & n. 2 (Brennan, *J.*, dissenting). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)); *see also Weg v. Macchiarola*, 654 F.Supp. 1189, 1191–92 (S.D.N.Y.1987).

## II. Negligence Claims

■ Under certain circumstances, an employer who knows or who can reasonably foresee that an employee, while on the job, is likely to commit an assault, may be held responsible for the employee's activities. In order to establish a shipowner's liability in negligence under these circumstances, a plaintiff must establish that (1) the assailant is a person of known vicious character, *Offshore Logistics Inc. v. Astro—Marine, Inc.*, 482 F.Supp. 1119, 1121 (E.D.La.1980) and (2) the shipowner knew or should have known of the crew member's violent propensities. *Sundberg v. Washington Fish & Oyster Co.*, 138 F.2d 801 (9th Cir.1943).

■ Under the doctrine of *respondeat superior*, an employer may also be found liable for an assault by an employee if the assault is committed by a superior upon a subordinate and the assault bears a relation to the real or apparent scope of the attacker's employment or to the interest of the employer, that is, when it is in furtherance of the employer's business. *See Lykes Brothers S.S. Co., Inc. v. Grubaugh*, 128 F.2d 387, 391 (5th Cir.1942); *see also Jones v. Lykes Bros. S.S. Co.*, 204 F.2d 815 (2d Cir.1953) (no recovery under Jones Act for assault by fellow servant unless assault was committed in discharge of assailant's duties and in furtherance of work of employer's business).

Review of the undisputed facts in this case indicates the absence of facts sufficient to establish a *prima facie* claim under either theory.

### A.

■ Absent from the record are facts which would permit the inference that BSL was negligent in hiring or employing Wilson. There are no facts to establish that Wilson's violent conduct was foreseeable. Significantly, there is no indication that Wiradihardja or anyone else ever heard or saw Wilson harm or threaten anyone or otherwise exhibit violent conduct. (Tr. at 88.) In addition, Wiradihardja personally promoted Wilson from galley cleaner to vegetable cook, after Wilson requested the promotion (Tr. at 25), an action that Wiradihardja would hardly have taken had he any reservations about Wilson's possible propensity toward violence. As Wiradihardja has failed to proffer evidence from which a reasonable trier of fact could conclude that his assailant had a propensity to violence or that BSL should have known of any such vicious propensity, the Court holds that, as a matter of law, no reasonable juror could find that BSL was negligent in employing Wilson.

■ Although Wiradihardja points to two occasions where Wilson refused to follow orders from superiors (*see* Wir. Tr. at 27–28, 32–33), these incidents fail to create a genuine triable issue as to the foreseeability of Wilson's violent conduct. These two incidents, perhaps properly described as "insubordination" were reported to Wiradihardja himself who in turn conveyed the information to officers aboard the S.S. QUEEN, who took no disciplinary action. At best, these incidents support the notion that sailors often lead a rough life and, when confined to a vessel for extended periods during ocean voyages, may be more prone to quarrelsome behavior than are their landlubbing counterparts. *See Jones v. Lykes Bros. Steamship Co.*, 204 F.2d 815, 817 (1953) ("every workman is apt to be angry when a fellow complains of his work to their common superior ... some will harbor their resentment and pro-

voke a quarrel ... sailors lead a rough life and are more apt to use their fists"). Moreover, there is no evidence that these two incidents involved any acts of violence. Accordingly, the Court holds that proof of these two incidents, without more, do not constitute sufficient evidence from which a trier of fact may reasonably infer a propensity to violence.

### B.

■ Wiradihardja similarly fails to adduce facts sufficient to support a claim under the theory of *respondeat superior.* Wiradihardja's own testimony establishes that as a vegetable cook, Wilson was subordinate to Wiradihardja and worked under Wiradihardja's supervision. (Tr. at 25.) The alleged attack, therefore, was by a subordinate upon a superior. Wiradihardja thus fails, as a matter of law, to satisfy the core elements of his *respondeat superior* claim, namely that the attack was both by a superior upon a subordinate and in furtherance of the employer's business. *See Lykes Brothers S.S. Co., Inc. v. Grubaugh,* 128 F.2d 387, 391 (5th Cir.1942); *see also See Walters v. Moore–McCormack Lines,* 309 F.2d at 194–95 (assault "not committed for the benefit of the defendant" may not be viewed as a vicious and vengeful act which the owner could predict at the time of hiring).

Accordingly, BSL is entitled to summary judgment dismissing the complaint's negligence claim.

### III. Unseaworthiness

■ It is well-established that a shipowner has an absolute nondelegable duty to ensure that its vessel is seaworthy. *Kratzer v. Capital Marine Supply, Inc.,* 490 F.Supp. 222, 229 (M.D.La.1980) (citing *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960)). This duty encompasses the obligation to provide a competent crew, composed of seamen of equal disposition and seamanship to ordinary men in the calling. *See Vallot v. Central Gulf Lines, Inc.,* 641 F.2d 347 (5th Cir.1981); *Miles v. Melrose,* 882 F.2d 976 (5th Cir.1989). The key point is that a ship is rendered "unseaworthy" unless it and all of its appurtenances and crew members are reasonably fit and safe for their intended maritime endeavors. *See Miles v. Melrose,* 882 F.2d 976 (5th Cir.1989); *Kratzer v. Capital Marine Supply, Inc.,* 490 F.Supp. 222 (M.D.La.1980).

■ An injured seaman may recover from a shipowner for breach of the warranty of seaworthiness if injuries were intentionally caused by a fellow seaman in an unprovoked and unusually savage attack. *See Claborn v. Star Fish & Oyster Co., Inc.,* 578 F.2d 983, 985–87 (5th Cir.1978). Unlike a negligence claim for which foreseeability and fault are required, such are not prerequisites to an unseaworthiness claim. *See Bartholomew v. Universe Tankships, Inc.,* 263 F.2d 437, 444 (2d Cir.), *cert. denied,* 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959); *Deakle v. John E. Graham & Sons,* 756 F.2d 821 (11th Cir. 1985). What is required, however, is a showing that the seaman has a "savage and vicious nature," rendering the ship a "perilous place." *Walters v. Moore–McCormack Lines Inc.,* 309 F.2d 191, 193 (2nd Cir.1962); (citing *Boudoin v. Lykes Brothers S.S. Co.,* 348 U.S. 336, 340, 75 S.Ct. 382, 385, 99 L.Ed. 354 (1955)). Significantly, the Supreme Court has held that a vessel's unseaworthiness may be established solely upon the circumstances of the crew member's conduct, which is itself sufficient to establish his savage and vicious nature. *See Boudoin v. Lykes Brothers S.S. Co.,* 348 U.S. at 340, 75 S.Ct. at 385.

■ Upon consideration of the record here, the Court concludes that Wiradihardja has adduced sufficient unrebutted evidence from which a jury may reasonably conclude that Wilson's presence aboard the S.S. QUEEN rendered the vessel unfit for its maritime endeavors. Specifically, the record supports a finding that Wilson attacked Wiradihardja with an instrumentality that was likely intended to cause an injury more severe than would have been inflicted with fists alone. It is clearly possible for a jury to conclude, based upon the severity of the injuries Wiradihardja suffered as a result of the attack as well as

the apparent sudden and unprovoked nature of the attack, that Wilson had such a dangerous propensity toward violence so as to have rendered the vessel unseaworthy. *See Deakle,* 756 F.2d at 826 (where defendant did not controvert facts surrounding attack, evidence of sudden, savage, and unprovoked assault warranted finding of unseaworthiness without regard to fault or notice of crew member's violent propensity). Accordingly, BSL's motion to dismiss the complaint's unseaworthiness claim is denied.

## IV. Summary Judgment in Plaintiff's Favor

■ Although raising and granting a summary judgment motion *sua sponte* in favor of the non-moving party is not expressly authorized by Rule 56, the practice has become an accepted method of expediting litigation. *See Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162 (2d Cir.1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) and C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2720, at 33–35 (1983)). The prevailing view in this Circuit is that a court need not give notice of its intention to enter summary judgment against a moving party since "it is most desirable that the court cut through the mere outworn procedural niceties and make the same decision as would have been made had [plaintiff] made a cross-motion for summary judgment." *Local 33 Int'l Hod Carriers Bldg. and Common Laborers Union of Am. v. Mason Tenders Dist. Council of Greater N.Y.,* 291 F.2d 496, 505 (2d Cir.1961); *see also Abrams v. Occidental Petroleum Corp.,* 450 F.2d 157, 165–66 (2d Cir.1971), *aff'd,* 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973). The threat of procedural prejudice in raising and granting such a motion is greatly diminished if the court's *sua sponte* determination is based on issues identical to those raised by the moving party. *See Coach Leatherware Co.,* 933 F.2d at 167. For the reasons set forth below, the record and procedural posture of this case establish that Wiradihardja is entitled to partial summary judgment—with respect to liability only—on his unseaworthiness claim.

■ In considering Wiradihardja's entitlement to summary judgment on his unseaworthiness claim, the Court has relied upon certain aspects of the procedural background of this action as well as the facts and circumstances which prompted Wiradihardja's motion for discovery sanctions, all of which are summarized below.

During the course of discovery in this action, Wiradihardja propounded a Supplemental Notice to Produce, dated June 18, 1990, (the "Supplemental Notice") requesting that BSL produce for discovery and inspection, *inter alia,* "[p]ersonnel records, including employment application, for Wiradihardja's assailant, Winston Wilson ... [and] [t]he names and addresses of persons who witnessed the incident of June 30, 1988 that is the subject of this lawsuit." Supplemental Notice, at ¶¶ 1, 3. BSL, by its attorney Michael D. Martocci, Esq., responded to this request for production of documents, in pertinent part, as follows:

1. Defendant had no employee named Winston Wilson employed on the QUEEN OF BERMUDA ... on June 30, 1988.

2. Since defendant sold its cruise vessels as of May 12, 1989, and since defendant no longer owns or operates any cruise vessels, defendant disposed of most of its records, such as crew lists and other routine documents. Some records were passed on to the company which purchased the vessel, and these records were stored in a warehouse, but poorly labelled. A search has been made of the warehouse without success....

3. *Defendant is unaware of any witnesses to the incident of June 30, 1988.*

Responses to Plaintiff's Supplemental Notice to Produce, dated July 5, 1990, annexed to the Burke Affidavit (emphasis added).

On December 5, 1990, the Magistrate Judge supervising discovery in this action issued an order which provides, in pertinent part, as follows:

The Court declines to order defendant to permit plaintiff's counsel to review its

warehoused documents. Based on the representation of defendant's counsel and his client as to the unavailability or personnel files of witnesses specified by plaintiff's counsel, as well as ignorance of the last known addresses of those individuals, defendant will be precluded from calling at trial any fact witnesses formerly employed on the ship in question concerning whom defense counsel has represented that defendant has no locatable records.

Order of United States Magistrate Judge Michael H. Dolinger, dated December 5, 1990.

During the course of briefing his motion to have BSL's answer stricken pursuant to Rule 37(b)(2)(C), Wiradihardja asserted that contrary to BSL's earlier representation to the Court that it was unable to locate and produce personnel files he sought during discovery, such documents were in fact in BSL's possession and were being withheld from him. Wiradihardja contended that, because BSL's counsel refers to the alleged assailant's "unblemished" "record" as well as "his record" in its memorandum of law, BSL necessarily possessed the assailant's personnel file while attempting to conceal this fact from the Court. ·

BSL's counsel denied these accusations, indicating that "[i]t amounts to complete nonsense to interpret an inadvertent error in English, taken out of the context of the paragraph ... as a "terrible" concealment .of legitimate discovery documents or information...." " Defendant's Reply and Opposition Memorandum ("Def.Mem.") (undat-

ed, served and filed on July 26, 1991), at 5. BSL counsel went on to indicate that:

defendant firmly stands by all its previous statements contained in all responses to plaintiff's discovery requests, namely that it has no personnel records regarding the assailant whose correct identity has never been revealed by plaintiff, and that it has truthfully responded to plaintiff's discovery requests. Defendant's Memorandum .of Law and the Martocci Moving Affidavit made numerous references to information contained in the record of this case and not in the assailant's personnel records which Mr. Martocci has never seen because defendant does not know the identity of the assailant.

Def.Mem., at 3–4. Thus, BSL affirmed its earlier responses to Wiradihardja's discovery requests; namely, that it (i) had no employee which it could identify as Winston Wilson, employed on the S.S. QUEEN at the time of the incident which is the subject of this action, (ii) was unable to locate and· produce any pertinent documents sought by Wiradihardja, (iii) is unaware of any witnesses to the incident of June 30, 1988.

On October 16, 1989, Wiradihardja gave sworn deposition testimony which detailed the facts and circumstances surrounding the June 30, 1988 attack on board the S.S. QUEEN. BSL, however, has proffered no evidentiary facts to rebut Wiradihardja's account of the incident.[5] Moreover, BSL's statement of undisputed material facts, submitted pursuant to Local Civil Rule 3(g), concedes each and every material aspect of Wiradihardja's factual account of the assault.[6] Accordingly, with respect to

---

5. As BSL has repeatedly indicated that it is unaware of any witnesses to the incident of June 30, 1988, this failure to controvert Wiradihardja's account with evidentiary facts appears to be a result of its failure to locate relevant documents and witnesses.

6. BSL's Rule 3(g) statement provides in pertinent part as follows:

1. BSL owned and operated a cruise vessel known as the s/s QUEEN OF BERMUDA on June 30, 1988.

2. BSL employed plaintiff on the QUEEN OF BERMUDA as food manager on June 30, 1988.

3. On June 30, 1988, plaintiff was in his office adjacent to the vessel's crew mess hall doing paperwork. A subordinate vegetable cook crew member appeared at the doorway of plaintiff's office and threw a bottle of katsup [sic] which plaintiff evaded. The assailant then threw a bottle of tobasco [sic] sauce which struck plaintiff's left forearm.

4. Neither before nor after the incident did the assailant explain the reasons for his sudden assault.

5. Before the incident of June 30, 1988, plaintiff and the assailant had a friendly relationship. Plaintiff promoted the assailant shortly before the incident.

liability only, there are no material issues of fact in dispute and Wiradihardja's unseaworthiness claim is one the Court may decide as a matter of law.

Because the Court finds, for the reasons set forth above, *see* pp. 994–995, *supra*, that Wiradihardja has adduced sufficient uncontroverted evidence from which a jury may reasonably conclude that Wilson's presence aboard the S.S. QUEEN rendered the vessel unfit for its maritime endeavors, BSL's failure to rebut any of the evidence supporting Wiradihardja's claim mandates summary judgment, as to liability only, in Wiradihardja's favor.

## CONCLUSION

For the reasons set forth above, BSL's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting it summary judgment dismissing the complaint, is granted to the extent that plaintiff's claim for relief is premised upon negligence or *respondeat superior*, and is denied in all other respects. The Court *sua sponte* grants summary judgment in favor of plaintiff on his unseaworthiness claim, with respect to liability only. The parties shall file an amended joint pre-trial order with respect to the trial on damages by September 15, 1992, and the trial on the issue of plaintiff's damages shall begin on October 12, 1992, at 9:30 a.m., in Courtroom 2704.

SO ORDERED.

6. The assailant gave no prior indication of any tendencies to assault or vicious propensities. There is no evidence as to any other assault previously or thereafter committed by the assailant against any other crew member. The assailant had no previous record regarding misconduct, behavior or violation of ship's discipline.

7. Plaintiff was never threatened by the assailant, nor did plaintiff have any disagreement or fight with the assailant prior to June 30, 1988. Plaintiff never heard the assailant harm or threaten to harm anyone.
Defendant's Rule 3(g) Statement (undated, served and filed on June 18, 1991, at ¶¶ 1–7.